**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

        v.                                                    No. 10-CV-457
                                                                  (GLS/DRH)

DAVID M. WOJESKI, Trustee of David L. and
Lynn A. Smith Irrevocable Trust U/A 8/04/04.

                              Defendant.

---

**APPEARANCES:**                            **OF COUNSEL:**

DAVID STOELTING, ESQ.                 ANDREW CALAMARI, ESQ.
Attorney for Plaintiff                MICHAEL PALEY, ESQ.
Room 400                              KEVIN McGRATH, ESQ.
3 World Financial Center              LARA MEHREBAN, ESQ,
New York, New York 10281              LINDA ARNOLD, ESQ.
                                      JACK KAUFMAN, ESQ.


JILL A. DUNN, ESQ.
Attorney for Defendant Trust
Suite 210
99 Pine Street
Albany, New York 12207

ISEMAN, CUNNINGHAM, RIESTER &          ROBERT H. ISEMAN, ESQ.
     HYDE, LLP                         RICHARD A. FRANKEL, ESQ.
Attorney for Defendant Trust           JAMES P. LAGIOS, ESQ.
9 Thurlow Terrace
Albany, New York 12203

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

        Plaintiff Securities and Exchange Commission ("SEC") previously moved for a

preliminary injunction freezing the assets of the defendants and certain related parties.  Dkt.

Nos. 4,5.  Among those assets was the David L. and Lynn A. Smith Irrevocable Trust U/A

8/04/04 ("Trust"), which cross-moved to lift the temporary restraining order as to the Trust. Dkt. No. 31.  Following an evidentiary hearing, an order was entered granting the SEC's motion in part but denying its motion and granting the cross-motion of the Trust as to the Trust's assets.  Dkt. No. 86.  Familiarity with that decision is assumed.  Presently pending is the SEC's motion for reconsideration of that decision as to the Trust and for an order freezing the Trust's assets pending the outcome of this action.  Dkt. No. 103.  The Trust opposes the motion.  Dkt. Nos. 147-49.  For the reasons which follow, the SEC's motion for reconsideration is granted and, upon reconsideration, its motion for a preliminary injunction as to the Trust is granted.

## I. Background

The decision denying the SEC's motion to freeze the Trust was filed on July 7, 2010. Dkt. No. 86.[1]  In relevant part, that decision found that the SEC had failed to meet its burden of demonstrating either that the Trust was created with or the repository of ill-gotten funds or that defendant David L. Smith was an equitable or joint owner of the Trust.  Dkt. No. 86 at 37-41.  The Trust's assets, which had been frozen by a temporary restraining order filed April 20, 2010 (Dkt. No. 5), were unfrozen and at least $1 million of the approximately $4 million of the Trust's assets were distributed before the Trust was again frozen.  Mehraban

---

[1]The SEC sought to freeze the assets of the Trust upon its contention that defendant David Smith possessed an equitable or beneficial interest in the Trust.  The Trust's motion to intervene was granted and it appeared at that time as a non-party.  On August 2, 2010, the SEC filed an amended complaint which, inter alia, named the Trust as a defendant.  Am. Compl. (Dkt. No. 100) at ¶ 28.

Reply Decl. (Dkt. No. 142-1).[2]

The Trust was created by David and Lynn Smith on August 4, 2004 in a "Declaration of Trust" for the benefit of the Smiths' two children.  Dkt. No. 32-1.  The Declaration of Trust was signed by the Smiths and by Thomas Urbelis ("Urbelis") as the Trustee.  Id. at 7.  Notwithstanding the purported irrevocable character of the Trust, the Smiths and Urbelis as Trustee entered into a second agreement effective on the same date, August 31, 2004, entitled "Private Annuity Contract Between David L. Smith & Lynn A. Smith as Transferors and the David L. & Lynn A. Smith Irrevocable Trust U/A dated August 31, 2004, Transferee."  Dkt. No. 103-3 ("Annuity Agreement").  The Annuity Agreement required the Trust to make annual payments from the Trust to the Smiths of $489,932.00 beginning September 26, 2015 and continuing until the last of David or Lynn Smith died or the annuity was exhausted.  Id.  When the payments commenced in 2015, the Smiths would be ages 69 and 70 with the longest life expectancy of either being fifteen years.  Id. at Ex. 2.  Assuming no other distributions from the Trust, the distributions under the Annuity Agreement would exhaust the Trust's assets with the fifteenth and final payment to the Smiths.  Id. at Ex. 2.  If the Trust assets were not exhausted before the last of the Smiths died, the remaining assets would remain with the Trust for the benefit of the Smiths' children.  Id.

The existence of the Annuity Agreement was not disclosed to the SEC at any time prior to the Court's decision on July 7, 2010.  Stoelting Decl. (Dkt. No. 103-2) at ¶¶ 9-34.  On July 22, 2010, David Stoelting ("Stoelting") and Kevin P. McGrath ("McGrath"), Esqs.

_____

[2] Approximately $600,000 was paid to Lynn Smith for the purchase of a family vacation property.  Mehraban Reply Decl.

attorneys for the SEC, spoke by telephone with Jill A. Dunn ("Dunn"), Esq., attorney for the Trust.  Stoelting Decl. at ¶ 36; Dunn Decl. (Dkt. No. 134) at ¶ 35.  As discussed infra, what was said by Dunn in this conversation is disputed by the participants.  Compare Stoelting Decl. at ¶ 36 ("During the course of a brief conversation, Ms. Dunn disclosed the existence of a private annuity agreement involving the Smiths and the Trust.  This was the first time any person, attorney or agent associated with David or Lynn Smith or the Trust disclosed the existence of a private annuity agreement involving the Trust to the SEC.") with Dunn Decl. at ¶ 35 ("Stoelting's assertion that I made a reference, passing or otherwise, to a 'private annuity agreement' in a telephone call on July 22, 210 is simply and unequivocally false.").  Following this conversation, the SEC contacted Urbelis, who produced a copy of the Annuity Agreement to the SEC on July 27, 2010.  Stoelting Decl. at ¶¶ 37-39.  The present motion followed on August 3, 2010.[3]

## II. Discussion

### A. Reconsideration

Under Fed. R. Civ. P. 60(b), "the court may relieve a party or its legal representative from a final . . . order[] or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[4][, or] (3) fraud (whether previously called intrinsic or

---

[3]The motion was initiated with an order to show cause entered upon the SEC's application which again restrained the assets of the Trust and granted various other temporary relief.  Dkt. No. 103.

[4]Rule 59(b) requires that a motion for a new trial be filed within twenty-eight days after the entry of judgment.

extrinsic), misrepresentation, or misconduct by an opposing party . . . ."  Where, as here, a

party seeks reconsideration on the ground of new evidence, the moving party must

demonstrate (1) evidence existing at the time of the prior decision, (2) the evidence could

not have been discovered in the exercise of reasonable diligence, (3) that evidence is

admissible, and (4) the evidence would probably change the result of the prior ruling.  See

Bahar v. United States, No. 08 Civ. 4738(WHP), 2009 WL 2382977, at *1 (S.D.N.Y. Aug. 4,

2009) (citing Kahn v. NYU Med. Ctr., No. 06 Civ. 13455(LAP), 2008 WL 190765, at *2

(S.D.N.Y. Jan. 15, 2008), aff'd, No. 08-0502, 2009 WL 2171322 (2d Cir. May 21, 2009)).

The standard for reconsideration is strict and is committed to the discretion of the court.

See Santiago v. Owens-Ill., Inc., No. 3:05 CV 405(JBA), 2006 WL 1601182, at *1 (D. Conn.

June 7, 2006); Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276(DLC), 2004

WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004).  "Relief under Rule 60(b) is generally not

favored and is properly granted only upon a showing of exceptional circumstances."

Insurance Co. of N.A. v. Pub. Serv. Mut. Ins. Co., 609 F.3d 122, 130-31 (2d Cir. 2010)

(internal quotation marks and citation omitted).

       There exists no dispute on this record that the Annuity Agreement existed at the time

of the prior decision and that it is admissible on the SEC's motion for a preliminary

injunction as to the Trust.  However, the Trust contends that the SEC could have discovered

the Annuity Agreement prior to the decision in the exercise of reasonable diligence and that,

even if the Annuity Agreement is considered, the SEC's motion for a preliminary injunction

as to the Trust would still be denied.

       Before the decision on July 7, 2010, the SEC sought discovery of information in

multiple ways which should have revealed the existence of the Annuity Agreement.  First,

5

the SEC examined documents made available by the United States Attorney's Office which had been seized from various premises associated with, inter alia, David Smith.  The Annuity Agreement was not provided.  Stoelting Decl. at ¶ 18.  After July 22, 2010, the SEC specifically requested of the criminal investigators a copy of the Annuity Agreement if any had been seized and a copy of the agreement was thereafter provided. Stoelting Testimony at 45-46.[5]

Second, Lynn Smith was required to file a verified financial statement, which she did on May 5, 2010.  That statement contained no reference to the Annuity Agreement.  Dkt. No. 19.  David Smith asserted his Fifth Amendment privilege against self-incrimination in declining to provide a verified financial statement, but a list of accounts he provided omitted any reference to the Annuity Agreement.  Dkt. Nos. 17, 22.  On May 10, 2010, the SEC served Lynn Smith with a request to produce documents.  Dkt. No. 103-5.  Requests 9-11 and 17 all required Lynn Smith to produce the Annuity Agreement, but she did not.  Id. at 5-6;[6] Stoelting Decl. at ¶¶ 13, 14.  In an affidavit filed May 21, 2010, Lynn Smith stated that "[f]rom the time the trust was created in August 2004, my husband and I have had no interest in or expectation of an interest in the . . . Trust.  It exists solely, exclusively and permanently for the benefit of our children."  Dkt. No. 34 at ¶ 6 (emphasis added).  In a deposition by the SEC on May 27, 2010, Lynn Smith was asked numerous questions which reasonably should have elicited disclosure of the Annuity Agreement, but she again failed to

---

[5]References to the pages of the testimony of Stoelting, McGrath, and Dunn are to the pages of the transcript of the evidentiary hearing on November 16, 2010.

[6]For example, Request No. 9 sought "[d]ocuments sufficient to show all assets . . . held or purchased and/or sold since January 1, 2000, directly or indirectly, by or for the benefit of Lynn A. Smith . . . ."  Dkt. No. 103-5 at 5.

disclose its existence.  Dkt. No. 46-3 at 39-41, 46, 79-87.  Lynn Smith also testified at the

hearing on the SEC's motion for a preliminary injunction on June 10, 2010.  Lynn Smith

again failed to disclose the existence of the Annuity Agreement despite numerous questions

for which disclosure would reasonably have been required.  Dkt. No. 88 at 320, 388, 391-

92.[7]

Third, on May 28, 2010, the SEC served a subpoena on Urbelis as the then Trustee

for the Trust.  Dkt. No. 103-7.  Requests No. 1-4 and 7[8] required Urbelis to disclose the

Annuity Agreement.  Id. at 2-3.  The Annuity Agreement was not among documents

provided by Urbelis in response to the subpoena.  Stoelting Decl. at ¶ 17.  Urbelis was

deposed by the SEC on June 1, 2010.  Dkt. No. 46-6.  Urbelis failed to disclose the

existence of the Annuity Agreement during the deposition despite being asked questions

and giving answers which reasonably should have elicited such disclosure.

Thus, three individuals – David Smith, Lynn Smith, and Urbelis – had actual

knowledge of the Annuity Agreement by virtue of having signed it.  David Smith's assertion

of his Fifth Amendment privilege precluded the SEC from discovering the Annuity

Agreement from him.  Lynn Smith failed to disclose the Annuity Agreement in response to a

document demand and when giving testimony under oath on two separate occasions.[9]

Prior to the July 7, 2010 decision, Urbelis also failed to disclose the Annuity Agreement

_____

[7]As to these non-disclosures, Lynn Smith now asserts through her attorney that she inadvertently failed to recall the Annuity Agreement.  Featherstonhaugh Decl. (Dkt. No. 133) at ¶ 5.

[8]Request 7 requested "[a]ll documents concerning the Trust."  Dkt. No. 103-7 at 3.

[9]See Decision of July 7, 2010 (Dkt. No. 86) at 9 n.13 (rejecting Lynn Smith's testimony as incredible).

even though served with a subpoena which required him to produce that agreement and even though he testified at a deposition during which he was asked questions which should have elicited disclosure of the Annuity Agreement.  Therefore, the SEC asked questions of the only individuals with actual knowledge of the Annuity Agreement which should have led to its disclosure.

### 1. The SEC's Discovery of the Annuity Agreement

The Trust contends that these efforts failed to meet the reasonable diligence requirement of Rule 60(b)(2).  First, the Trust contends that the event which the SEC asserts led to its discovery of the Annuity Agreement did not occur, compelling the conclusion that the SEC has fabricated the basis for its discovery of that agreement.  That event was the telephone call among the SEC's attorneys, Stoelting and McGrath, and the Trust's attorney, Dunn, on July 22, 2010.  The SEC asserts that during this conversation, Dunn disclosed the existence of the Annuity Agreement, this caused the SEC to contact Urbelis, and Urbelis provided a copy of the agreement to the SEC.[10]  Stoelting Decl. at ¶ 40; Stoelting Testimony at 6-12.  McGrath does not recall this statement by Dunn. McGrath Testimony at 54.  The Trust agrees that the July 22, 2010 telephone conversation among Stoelting, McGrath, and Dunn occurred but denies that Dunn made any reference to the Annuity Agreement.  Dunn Decl. at ¶ 35 (describing the SEC's assertion as "a disgusting

---

[10]The copy provided by Urbelis to the SEC bears the signatures of David and Lynn Smith but not that of Urbelis as Trustee.  Dkt. No. 103-3 at 5.  Neither an original nor a copy of the Annuity Agreement bearing the signatures of all parties has been provided here. However, the parties have stipulated that the Annuity Agreement was in existence and effective on and after August 31, 2004, and that it remains in effect unchanged to date.  Dkt. No. 177.

attempt to mislead the Court"); Dunn Testimony at 84.

These contradictory assertions present a clear question of credibility on the material issue raised by the Trust whether Dunn disclosed the existence of the Annuity Agreement in the July 22, 2010 telephone conversation.  A hearing was held on November 16, 2010 at which Stoelting, McGrath, and Dunn each testified concerning the telephone call.  For the reasons which follow, the Court finds credible the description of the telephone conversation offered by Stoelting and rejects as not credible the testimony of Dunn.

First, the testimony of Stoelting is consistent and comports with probability.  He and McGrath both testified that they were in the process of preparing a second application to restrain the Trust's assets.  This application was premised on the theory that the Trust owed up to 50% of its assets in gift and capital gains taxes, which it had never paid, because those assets had been donated to the Trust by David and Lynn Smith according to the record of the prior hearing.  Dunn had asserted in a conference with the Court on the morning of July 22, 2010 that no such taxes were owed.  Stoelting Testimony at 4-6; McGrath Testimony at 51-53.  Shortly after the conference with the Court, Stoelting and McGrath telephoned Dunn to determine the basis for her contention that no taxes were owed.  Dunn asserted that no taxes were owed because of the "private annuity agreement" and, in response to Stoelting's next question, that a copy of the agreement was "in the binders," referring to the documents provided to the SEC by the Trust earlier in the case Stoelting Testimony at 6.  McGrath did not hear Dunn refer to a "private annuity agreement" but did hear her say that the SEC had not even read its own documents.  McGrath Testimony at 54-55.  According to Dunn, she made no reference to a "private annuity agreement" but did refer to a "private annuity trust."  Dunn Testimony at 58, 84.  Dunn's

9

reference led the SEC to consult their tax expert who advised that in 2004, a procedure existed to create an irrevocable trust in conjunction with a private annuity agreement which allowed individuals in the Smiths' circumstances to avoid gift and capital gains taxes. Stoelting Testimony at 9-11.  The SEC then contacted Urbelis to determine if such an annuity agreement existed which led to Urbelis producing the Annuity Agreement to the SEC on July 27, 2010.  Stoelting Decl. at ¶ 39.

The SEC version of events is internally consistent and probable.  The reason for the telephone call to Dunn and the question which elicited the reference to the "private annuity agreement" both followed naturally and probably from their context and prior events. Moreover, Dunn's reference to a "private annuity trust" would not have engendered any suspicions for the SEC as did her reference to a "private annuity agreement."  As discussed infra, the term "private annuity trust" had been utilized previously in the case and had reasonably been taken by the SEC to refer to the Declaration of Trust. Dunn's reference to a "private annuity agreement," however, was the first such reference by anyone associated with the Trust and naturally and probably raised the SEC's suspicions.  No other reason for the SEC re-contacting Urbelis at that time appears other than Dunn's disclosure and, while Dunn denies the disclosure, the Trust offers no plausible explanation for the SEC seeking the Annuity Agreement from Urbelis at that time other than mere speculation.  The Court also finds more credible the demeanor and manner of the testimony of Stoelting and McGrath than that of Dunn.

Second, Dunn's testimony and assertions regarding the telephone conversation and discovery of the Annuity Agreement have been inconsistent and contradictory.  Dunn's first response on this motion was that (1) the SEC had falsely asserted that she disclosed the

10

Annuity Agreement in the July 22, 2010 telephone conversation, (2) she could not have made any reference to the Annuity Agreement in the telephone conversation because she did not learn of its existence until July 27, 2010, and (3) David Wojeski ("Wojeski"), the successor Trustee, also did not learn of the existence of the Annuity Agreement until July 27, 2010.  Dunn Decl. (Dkt. No. 134) at ¶¶ 24-36; Wojeski Decl (Dkt. No. 147) at ¶ 2.[11] However, in a supplemental declaration, Dunn advised that she had in fact received notice of the existence of the Annuity Agreement in an email from Wojeski on July 21, 2010, the day before the telephone conversation with the SEC, although she claims that she did not read it until after July 27, 2010.  Dkt. No. 188.  This new version was filed fifteen hours before the start of the evidentiary hearing at which she was to testify on November 16, 2010, six weeks after she filed a declaration asserting she had not known of the agreement before July 27, 2010, and over two months after she prepared a declaration for Wojeski stating that he too had not known of the agreement until July 27, 2010.[12]  The timing, sequence, and character of these events undermine the credibility of Dunn's assertions. Furthermore, Dunn now testifies that she did refer in the July 22, 2010 telephone call to a "private annuity <u>trust</u>" even if she did not use the phrase "private annuity <u>agreement</u>."  Dunn Testimony at 58, 84.

Third, Dunn's conduct since July 21, 2010 undermines her credibility on this issue. She acknowledges receiving notice of the Annuity Agreement in an email from her client,

---

[11]Dunn prepared Wojeski's declaration.  Dunn Testimony at 79-80.

[12]On November 17, 2010, Wojeski filed a supplemental declaration stating that he had in fact learned of the Annuity Agreement on July 20, 2010 when he received by telefax the documents he provided to Dunn the next morning.  Dkt. No. 191.

Wojeski, on July 21, 2010 but claims that she did not read it until days later or remember it weeks later.  Dkt. No. 188 at ¶ 3; Dunn Testimony at 76.  Her explanation is that she may have been distracted by a real estate closing, other clients, and a death in the family.  Dkt. No. 188 at ¶ 4.  Neither the claims that she ignored or forgot her client's email nor that she forgot the Annuity Agreement thereafter are credible, particularly where the existence of the Annuity Agreement was arguably dispositive on the Trust's motion to freeze the Trust's assets.  Furthermore, after July 27, 2010, the SEC demanded production from Dunn of all documents related to the Annuity Agreement.  Stoelting Testimony at 46-49 & Hearing Exs. 16, 21.  Without explanation, Dunn still failed to provide copies of the documents sent to her by Wojeski on July 21, 2010.  Dunn Testimony at 78-83.[13]  Moreover, neither Dunn nor the Trust ever supplemented its production of documents to the SEC in response to the SEC's May 2010 subpoena until hours before the evidentiary hearing on November 16, 2010.  Dkt. No. 188.

The fact that the decision on July 7, 2010 resolved the SEC's motion as to the Trust did not relieve Dunn or the Trust of its duty to supplement its response to the subpoena whenever they discovered the Annuity Agreement documents.  See Fed. R. Civ. P. 26(e); C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2049, p. 601 (1994); see also Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l Union, No. 00 Civ. 3613(LAP), 2004 WL 1943099, at *25 (S.D.N.Y. Aug. 27, 2004) ("the individual defendants and their counsel may not engage in parallel know-

---

[13]At least one page of the documents provided by Wojeski on July 21, 2010 was not among the pages provided to the SEC by Urbelis on July 27, 2010.  Compare Dkt. No. 188-1 at 5 (receipt for delivery of "Private Annuity Contract") with Dkt. No. 103-3 (copy of documents provided to SEC by Urbelis).

nothing, do-nothing, head-in-the-sand behavior in an effort consciously to avoid knowledge of or responsibility for their discovery obligations and to obstruct plaintiff's wholly appropriate efforts to prepare its case."). This continuing duty even after the July 7, 2010 decision carries particular force here where the significance of the Annuity Agreement documents to that decision was readily apparent from their face. Dunn's explanations for her conduct after July 21, 2010 and her breach of ethical and statutory duties render incredible her denial that she referred to the "private annuity agreement" in the July 22, 2010 telephone conversation.

Finally, all three attorneys are officers of the court and honor-bound to provide truthful testimony. All three attorneys also possess the same motivation to prevail in this action on behalf of their respective clients. However, Dunn additionally possesses a strong financial motive to avoid having the Trust's assets frozen. Following the July 7, 2010 decision, the Trust's assets were released from restraint back to the Trustee. Among other expenditures immediately thereafter, the Trust distributed to Dunn on July 9 and 31, 2010 a total of $101,096.40. Dkt. No. 142-2 at 4. Dunn thus possesses a financial interest in avoiding an order restraining the Trust's assets which might require return of legal fees already paid or prevent payment of legal fees in the future.

Therefore, the Court finds that the SEC did not discover the existence of the Annuity Agreement until disclosed by Dunn in the telephone conversation with the SEC attorneys on July 22, 2010 and did not obtain a copy of it until July 27, 2010.

**2. The SEC's Diligence**

The Trust further contends that the SEC failed to exercise reasonable diligence to discover the Annuity Agreement prior to the decision on July 7, 2010.  The Trust contends that the SEC should have discovered the existence of the annuity Agreement prior to July 7, 2010 because (1) the Declaration of Trust authorized the Trustee "[t]o purchase property from the [Smiths] in exchange for a private annuity payable to the [Smiths]" (Dkt. No. 32-1 at 4, ¶ 10 (emphasis added)); and (2) a letter in August 2004 from David Smith to Urbelis, provided to the SEC by Urbelis in response to the subpoena, referred to "the Private Annuity Trust."  Trust Mem. of Law (Dkt. No. 135) at 14-16.  The Trust contends that reasonable diligence required the SEC to question Urbelis and others at depositions and the evidentiary hearing about these two references, such questioning would have led to the disclosure of the agreement prior to July 7, 2010, and the failure to make such inquiries of Urbelis and others constituted a lack of reasonable diligence.

These contentions fail for several reasons.  First, the requirement of Rule 60(b)(2) is that the SEC have exercised reasonable diligence to discover the Annuity Agreement before the July 7, 2010 decision, not that it pursued every conceivable lead.  Reasonable diligence requires that the movant acted with some promptness where the facts and circumstances would put a person of common knowledge and experience on notice that some evidence might exist.  See Centex Homes v. S. Car. State Plastering, LLC, No. 4:08-cv-2495-TLW, 2010 WL 2998519, at *2 (D. S.C. July 28, 2010); Lin v. Lin, No. 08-00229 JNS/BMK, 2008 WL 4369771, at *5 (D. Haw. Sept. 24, 2008); Days Inns of M., Inc. v. P&N Enter., Inc., No. 3:97CV01374 (AWT), 2006 WL 2801248, at *5 (D. Conn. Sept. 29, 2006) (holding that reasonable diligence in other circumstances means acting in good faith and

14

with ordinary care); Fehribach v. Ernst & Young, LLP, No. 1:03-cv-0551-JDT-WTL, 2006 WL 1994846, at *6 (S.D. Ind. July 14, 2006).

Second, the reference in the 2004 David Smith cover letter to a "private annuity trust"[14] was reasonably read by the SEC as a reference to the Declaration of Trust since the Trust provided the letter to the SEC with only the Declaration of Trust attached.  Stoelting Testimony at 23-24.  This naturally led the SEC to conclude that the reference in the David Smith letter was to the Declaration of Trust rather than to the Annuity Agreement.  The reference in the Declaration of Trust authorizing the Trustee to enter into a private annuity agreement with the Smiths did not indicate the existence of such an agreement but was only one of fourteen separately enumerated powers of the Trustee.  Dkt. No. 32-1 at 3-4. Without more, neither reasonably gave notice of the existence of the Annuity Agreement as would have obliged the SEC, in the exercise of reasonable care and diligence, to seek its disclosure with greater specificity from the Trust or Lynn Smith.

Furthermore, the language of the Declaration of Trust was that of a gift of assets by the Smiths to their children, not of a contract for future consideration.  The Declaration refers to the Smiths as "donors" and not as "transferors," "sellers," or other terms commonly used to refer to a party to a contract.  Dkt. No. 32-1 at 1.  It further states that "[t]he Donors hereby transfer and deliver unto the Trustee the property described in Schedule A, attached

---

[14]The record in this case includes documents entitled "Declaration of Trust" (Dkt. No. 32-1), "Private Annuity Contract" (Dkt. No. 103-3 at 2), and a "Private Annuity Agreement" (Dkt. no. 103-3 at 3).  Instruments known as "private annuity trusts" exist.  See Dunn Testimony at 62-68.  However, no document entitled "Private Annuity Trust" can be found in the record of this case.

hereto, the receipt of which is hereby acknowledged by the Trustee. . . ." Id.[15]  In common

usage, "donor" means "[o]ne who gives something without receiving consideration for the

transfer."  Black's Law Dictionary 526 (8th ed. 2004).  With reference to trusts, the term may

refer to one who creates or transfers the power to control.  See N.Y. Est. Powers & Trusts §

10-2.2(a) (McKinney 2002).  Thus, a fair reading of the Declaration of Trust would have led

the SEC reasonably to conclude that the Trust assets derived from a gift to the Trust by the

Smiths to provide for their children rather than in return for an annuity contract or other

consideration not mentioned in the Declaration.

Before the July 22, 2010 telephone conversation, this reading was corroborated by

the testimony and statements of those associated with the Trust.  See, e.g., Dkt. No. 23 at ¶

23 (Lynn Smith affidavit filed May 21, 2010 stating that she and David Smith created the

Trust "to provide for my children's future"); Dkt. No. 46-3 at 39-40 (Lynn Smith testimony at

deposition by SEC on May 27, 2010 that the purpose of the Trust was for the children to

"have the rewards, reap the rewards of my husband's business"); Dkt. No. 88 at 388

(testimony of Lynn Smith on June 10, 2010 that she and David Smith created the Trust "so

that if [their children] wanted to start a business or buy a house or do something, that I could

actually see them reaping benefits during my lifetime"), 391-92 (by signing the Declaration

of Trust, she intended to transfer $4 million in assets to the Trust and, thereafter, had no

control over or expectation of receiving any money from the Trust); Stoelting Decl. at ¶ 32

(quoting successor Trustee as stating in affidavit dated May 25, 2010 that under the

---

[15]No copy of a "Schedule A" was attached to the signed copy of the Declaration of
Trust filed by the Trust nor to the copy filed by the Trust's expert witness.  See Dkt. Nos.
32-1, 134-1.  None has ever been submitted in the record of this case and it appears that
none exists.  See Stoelting Testimony at 25-26.

Declaration of Trust, David and Lynn Smith "have no interest, whether present, future or reversionary, in the trust, its income or its assets as it is irrevocable by its own terms and pursuant to [New York law]."); Dkt. No. 89 at 625 (argument of Trust's attorney on June 11, 2010 that upon signing the Declaration of Trust, Lynn Smith "relinquished all title, ownership, control, beneficial, equitable, actual or legal any interest whatsoever in that stock was gone from her hands the moment she transferred it. . . .").[16]

Thus, from the language of the Declaration of Trust and from the representations of those associated with the Trust, it was reasonable for the SEC to conclude that the Declaration constituted the sole, relevant authorizing document.  Since the SEC's discovery of the Annuity Agreement, the Trust has altered its position that the Declaration alone effectuated the transfer of David and Lynn Smith's assets to the Trust as a gift and without consideration.  The Trust now contends that the transfer was actually accomplished with the Annuity Agreement which, with the Declaration, constituted a contract between David and Lynn Smith and the Trust for the transfer of the Smiths' assets to the Trust in return for the annuity, transforming David and Lynn Smith from "donors" to "annuitants" and "creditors" of the Trust.  See Opinion of Trust's Expert Witness (Dkt. No. 134-1) at ¶ 23 ("David Smith and Lynn Smith are sellers.  The benefit of the bargain is that they become annuitant-creditor(s) of the Trust. . . .").  In these circumstances the failure of the SEC to pursue discovery of the Annuity Agreement prior to July 7, 2010 by asking more precise questions was not unreasonable.

---

[16]See also note 17 infra.

17

Third, by serving a subpoena on the Trust for categories of documents which should have included the Annuity Agreement and by demanding the same from Lynn Smith, the SEC reasonably sought its disclosure from the two parties to the agreement with actual notice of its existence who were in a position to respond.  Urbelis and Lynn Smith failed to disclose the Annuity Agreement as they were required to do.  Reasonable diligence requires ordinary care, good faith, and promptness, all of which the SEC has demonstrated here.  The fact that the SEC did not describe the document sought precisely as a "private annuity agreement" does not obviate the SEC's reasonable diligence.

Fourth, the Trust's contention rests on the assumption that Lynn Smith and Urbelis would have disclosed the Annuity Agreement if the SEC had employed precisely that wording in its requests and questions.  Based on the prior proceedings in this case, the Trust's assumption is unsupportable.  Furthermore, to allow the Trust to avoid the full consideration of evidence on this motion because of its own failure to disclose the Annuity Agreement may allow it to profit from its own wrongful conduct in failing to disclose the agreement prior to July 7, 2010.

Finally, the diligence of the SEC in obtaining the Annuity Agreement may fairly be evaluated by comparison to that of others similarly situated.  The Trust's attorney represented Urbelis in responding to the SEC's subpoena and at his deposition.  See Dkt. No. 46-6 at 2.  She thus had a duty of due diligence to discover the Annuity Agreement parallel to that of the SEC here.  Moreover, unlike the SEC in its efforts, the Trust's counsel was unfettered by the existence of privileges or by adverse interests.  The Trust's counsel too had knowledge of the two documents which the Trust now contends should have placed the SEC on notice to inquire in more detail about the Annuity Agreement.  The Trust's

18

counsel asserts that while she exercised due diligence in her representation of the Trust, she was unaware of the Annuity Agreement until after the July 7, 2010 decision.  Dkt. No. 188.

Others as well failed to learn of the Annuity Agreement.  Lynn Smith's counsel, representing one of the individuals with actual knowledge of the agreement and also unfettered by privilege or adverse interest, also asserts that he failed to discover the existence of the Annuity Agreement until after July 27, 2010 when it was provided by the SEC.  Featherstonhaugh Decl. (Dkt. No. 133) at ¶ 4.  He too presumably exercised due diligence in representing Lynn Smith in her response to the SEC's document demand and during the evidentiary hearing.  Wojeski, as successor Trustee to Urbelis, had a fiduciary duty of at least ordinary care to the Trust and its beneficiaries to identify any obligation of the Trust, such as the Annuity Agreement.  Also unfettered by privilege or adverse interest, he too claims that he did not learn of the existence of the Annuity Agreement until after the July 7, 2010 decision.  Dkt. No. 191.  In short, all those with obligations of diligence at least equal to that of the SEC and without the limitations of privilege or adverse interest also failed to discover the existence of the Annuity Agreement further supporting the SEC's contention that it exercised reasonable diligence.

Thus, the SEC exercised the reasonable diligence in the circumstances of this case required by Rule 60(b)(2).  The Trust's other contention is that the SEC has failed to meet its burden of demonstrating that if the Annuity Agreement had been discovered and admitted as evidence prior to the July 7, 2010 decision, the result of the motion for a preliminary injunction as to the Trust would probably have been different.  For the reasons set forth in subsection B _infra_ which is incorporated herein by reference, the court finds that

the SEC has also met its burden as to that requirement.  The SEC having done so, this motion presents the exceptional case where a party has satisfied the stringent requirements to obtain reconsideration of a decision based on newly discovered evidence.  The SEC's motion for reconsideration is granted under Rule 60(b)(2)[17] and the Court will reconsider that portion of the July 7, 2010 decision which denied the SEC's motion for a preliminary injunction as to the Trust.

## B. The Effect of the Annuity Agreement[18]

In the absence of the Annuity Agreement, this Court found in the July 7, 2010 decision that, inter alia, the SEC had failed to demonstrate a likelihood of success that it would prove that David Smith possessed any interest in the Trust.  Dkt. No. 86 at 39-41.

---

[17]The SEC also seeks reconsideration under Rule 60(b)(3) based on fraud, misrepresentation, or misconduct.  As described supra, the conduct of those associated with the Trust – principally Urbelis and Lynn Smith – in failing to disclose the Annuity Agreement satisfies the requirements for fraud, misrepresentation, and misconduct.  Their failure to disclose the agreement was exacerbated by their statements and testimony that the Trust was created solely to benefit the Smiths' children without disclosing the additional fact that the Trust was also created to pay a substantial annuity in the future to David and Lynn Smith.  The SEC's claims under Rule 60(b)(3) are further corroborated by the false assertions of Dunn and Wojeski on this motion as to when and how they learned of the existence of the Annuity Agreement.  The SEC has presented substantial evidence of such conduct by the Trust, through Urbelis, and Lynn Smith.  Lynn Smith's assertion that she simply forgot the agreement that was to pay her and her husband nearly $500,000 annually in their later years is rejected as incredible.  See also Dkt. No. 86 at 9 n.13.  Therefore, in the alternative, the SEC's motion for reconsideration is also granted under Rule 60(b)(3).

[18]The trust contends that in light of the Second Circuit's recent decision in S.E.C. v. Rajaratnam, __ F.3d __, 2010 WL 3768060 (2d Cir. Sept. 29, 2010), the Court may not consider any evidence derived from the the April 2010 searches by criminal investigators. Because the Annuity Agreement alone suffices to decide the motion at issue herein, the evidence proffered by the SEC obtained by criminal investigators during the searches will not be considered and this argument need not be addressed here.

The evidence which the Court found insufficient included testimony and documents demonstrating that David Smith had functioned as the investment advisor for the Trust, David Smith had paid approximately $100,000 in taxes owed by the Trust without reimbursement from the Trust, and Lynn Smith had paid expenses incurred by the Smiths' daughter, a beneficiary of the Trust, which would ordinarily have been paid by the Trust.  Id. When the Annuity Agreement is added to the analysis, however, the conclusion is compelled that David Smith possessed an equitable and beneficial interest in the Trust through the Annuity Agreement and that his conduct in controlling the investments of Trust assets by the Trustee, paying the Trust's taxes, and, with his wife, paying the living expenses of his adult child was to protect the assets of the Trust to insure their existence when the Annuity Agreement payments were to commence and not simply to protect those assets for the use of his children.[19]

The Trust contends, however, that the Annuity Agreement did not in fact create any interest in the Trust for David Smith.  The Trust argues first that the agreement created no present interest in the Trust for David Smith because no money was owed to him, and he could not enforce the agreement, until the first payment is due in 2015.  In support of this argument, the Trust offers the expert opinion to this effect of an attorney with expertise in the law of trusts.  Dkt. No. 134-1.  The question here, however, is not limited to whether David Smith has a present interest in the Trust which entitles him to payments.  It is undisputed that no such interest will accrue to David Smith until 2015.  However, as the

---

[19]This conclusion also constitutes the final requirement for the SEC to obtain reconsideration under Rule 60(b)(2) that if the Annuity Agreement had been discovered and considered prior to the July 7, 2010 decision, the result as to the Trust would have been different.  See subsection A supra.

expert opinion acknowledges, the Annuity Agreement creates in David Smith the contract rights of an annuitant and a creditor.  Id. at ¶¶ 23, 27.  This suffices to demonstrate that David Smith possesses a substantial interest in the Trust, however described.

The Trust's second contention is that because the Trustee was authorized by the Declaration of Trust to exhaust the assets of the Trust for the benefit of the named beneficiaries, the Smiths' children, there is no guarantee that the Trust will be able to honor the Annuity Agreement when the first payment comes due in 2015.  Hypothetically, this assertion is true.  The existence or amount of assets of the Trust which will be available in 2015 is presently uncertain.  The Trust has not exhausted its assets and still possesses assets with substantial value.  Whether those assets will be available in 2015 cannot be determined at present with certitude, but the possibility that any of the Trust's assets will be available to satisfy the Trust's obligations under the Annuity Agreement suffices.  Moreover, for the nearly six years following its creation until the onset of this litigation, the Trustee made only a single disbursement from the Trust, one that did not occur until 2010 and one that was substantially for the benefit of David Smith.  The conduct of the Trust in the six years of its existence supports the conclusion that a substantial portion of its assets are intended to be maintained to fulfill the Annuity Agreement and that the possibility that the Trustee will exhaust the Trust for the benefit of the beneficiaries remains remote.

With the Annuity Agreement, then, the SEC has demonstrated a substantial likelihood of success that it will prove that David and Lynn Smith created the Trust and the Annuity Agreement together to avoid gift and capital gains taxes approaching 50% of the $4.5 million value of the Trust assets, that David Smith maintained control of the investment of Trust assets after the Trust was created, and that he and his wife paid Trust taxes and

the living expenses of a Trust beneficiary to insure that the annuity payments required by the Annuity Agreement could be made beginning in 2015.  Therefore, the SEC has satisfied its burden of showing a substantial likelihood of success as to the Trust and, upon reconsideration, the SEC's motion for a preliminary injunction as to the Trust is granted.

### III. Conclusion

WHEREFORE, for the reasons stated above, it is hereby

**ORDERED** that:

1. The SEC's motion for reconsideration of that portion of this Court's decision filed July 7, 2010 which denied the SEC's motion for a preliminary injunction as to the Trust (Dkt. No. 103) is **GRANTED**;

2. That portion of this Court's decision filed July 7, 2010 (Dkt. No. 86) which denied the SEC's motion for a preliminary injunction as to the Trust (Dkt. No. 4) and granted the Trust's motion to lift the temporary restraining order as to the Trust (Dkt. No. 31) is **VACATED**;

3. The SEC's motion for a preliminary injunction as to the Trust (Dkt. No. 4) is **GRANTED**;

4. The Trust's motion to vacate the temporary restraining order as to the Trust (Dkt. No. 31) is **DENIED**; and

5. The SEC is granted leave to move for sanctions against the Trust, Wojeski, Urbelis, Dunn, Lynn Smith, and Lynn Smith's counsel for the conduct described herein without the necessity of the pre-motion conference required by N.D.N.Y.L.R. 7.1(b)(2), and any such motion shall be filed on or before **January 31, 2011**.

**IT IS SO ORDERED.**

DATED:  November 22, 2010
               Albany, New York

David R. Homer
U.S. Magistrate Judge