**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SECURITIES AND EXCHANGE COMMISSION,**

                 **Plaintiff,**           **1:10-cv-457**
                                             **(GLS/DRH)**

           **v.**

**MCGINN, SMITH & CO., INC; MCGINN, SMITH**
**ADVISORS, LLC; MCGINN, SMITH CAPITAL**
**HOLDINGS CORP.; FIRST ADVISORY INCOME**
**NOTES, LLC; FIRST EXCELSIOR INCOME**
**NOTES, LLC; FIRST INDEPENDENT INCOME**
**NOTES, LLC; THIRD ALBANY INCOME NOTES,**
**LLC; TIMOTHY M. MCGINN; DAVID L. SMITH;**
**LYNN A. SMITH; NANCY MCGINN; GEOFFREY**
**R. SMITH; LAUREN T. SMITH; FINRA AND THE**
**FINRA EMPLOYEES;** and **GEOFFREY R. SMITH,**
Trustee of the David L. and Lynn A. Smith
Irrevocable Trust U/A 8/04/04,

                 **Defendants,**

**LYNN A. SMITH** and **NANCY MCGINN,**

                 **Relief Defendants,** and

**GEOFFREY R. SMITH,** Trustee of the David L. and
Lynn A. Smith Irrevocable Trust U/A 8/04/04,

                 **Intervenor.**
_____

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF:**

| U.S. Securities & Exchange Commission | DAVID P. STOELTING |
| 3 World Financial Center | JACK KAUFMAN |
| New York, NY 10281 | KEVIN P. MCGRATH |
|  | LARA S. MEHRABAN |

**FOR THE DEFENDANTS:**

*Corporate Defendants*
Phillips, Lytle Law Firm   WILLIAM J. BROWN, ESQ.
3400 HSBC Center
Buffalo, NY 14203

*Timothy McGinn*
Office of E. Stewart Jones, Jr.  E. STEWART JONES, JR., ESQ.
28 Second Street, Jones Building
Troy, NY 12180

*David Smith*
Dreyer, Boyajian Law Firm   WILLIAM J. DREYER, ESQ.
75 Columbia Street
Albany, NY 12210

*Lynn Smith, Geoffrey Smith, and Lauren Smith*
Featherstonhaugh, Wiley Law Firm  JAMES D.
99 Pine Street, Suite 207   FEATHERSTONHAUGH, ESQ.
Albany, NY 12207

*Nancy McGinn*
Pro Se

*FINRA*
National Association of Securities  TERRI L. REICHER, ESQ.
Dealers, Inc.
1735 K Street N.W.
Washington, DC 20006

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff the United States Securities and Exchange Commission (SEC) commenced this action against defendants McGinn, Smith & Co, Inc., McGinn, Smith Advisors, LLC, McGinn, Smith Capital Holdings Corp., First Advisory Income Notes, LLC, First Excelsior Income Notes, LLC, First Independent Income Notes, LLC, Third Albany Income Notes, LLC, Timothy McGinn, and David Smith, alleging various violations of the Securities Act of 1933,[1] the Securities Exchange Act of 1934,[2] the Investment Advisors Act of 1940,[3] and the Investment Company Act of 1940.[4]  (*See* Am. Compl. ¶¶ 139-165, Dkt. No. 100.)  The SEC additionally asserted claims of fraudulent conveyance under the New York Debtor and Creditor Law against defendants Timothy McGinn, David Smith, Lynn

---

[1]15 U.S.C. § 77a, *et seq.*

[2]15 U.S.C. § 78a, *et seq.*; *see also* Rule 10b-5, 17 C.F.R. § 240.10b-5.

[3]15 U.S.C. § 80b-1, *et seq.*; *see also* Rule 206(4)-8,17 C.F.R. § 275.206(4)-8.

[4]15 U.S.C. § 80a-1, *et seq.*

3

Smith, Nancy McGinn, Lauren Smith, and Geoffrey Smith, individually and as Trustee of the David L. and Lynn A. Smith Irrevocable Trust U/A 8/04/04.  (*See id.* at ¶¶ 169-73; *see also* Feb. 14, 2011 Substitution Order, Dkt. No. 281.)  Lynn Smith and Nancy McGinn were also named as relief defendants, for allegedly receiving and retaining fraudulently and illegally obtained proceeds, of which the SEC seeks disgorgement.  (*See* Am. Compl. ¶¶ 166-68, Dkt. No. 100.)  Pending are Lynn Smith's motion to be dismissed as defendant and relief defendant, (Dkt. No. 224), and the Trust, Geoffrey Smith, and Lauren Smith's motion to dismiss, (Dkt. No. 283).  For the reasons that follow, Lynn Smith's motion is denied, the Trust defendants' motion is granted in part and denied in part, and the SEC is granted limited leave to re-amend its complaint.

## II.  Standard of Review

The standard of review under FED. R. CIV. P. 12(b)(6) is well established and will not be repeated here.  For a full discussion of the standard the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 217-18 (N.D.N.Y. 2010).

# III.  Discovery[5]

## A.    Relief Defendant Status

A "nominal" or "relief" defendant is "a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because [s]he has no ownership interest in the property which is the subject of the litigation."  *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); *see also SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("[T]he SEC may name a non-party depository as a nominal defendant to effect full relief in the marshalling of assets that are the fruit of [an] underlying fraud.").  Federal courts have jurisdiction over and "may order equitable relief against" a relief defendant in a securities enforcement action if she: "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."  *SEC v. Cavanaugh*, 155 F.3d 129, 136 (2d Cir. 1998) (citation omitted); *see also Cherif*, 933 F.2d at 414 n.11 ("A court can obtain equitable relief from a non-party against whom no wrongdoing is alleged if it is established that the non-party possesses illegally obtained

---

[5]For a full discussion of the factual and procedural background, the court refers the parties to Magistrate Judge David R. Homer's July 7 and November 22, 2010 Memorandum-Decisions and Orders.  (*See* July 7, 2010 Order at 3-12, Dkt. No. 86; Nov. 22, 2010 Order at 2-4, Dkt. No. 194.)  Importantly though, for purposes of the pending motions, the court will limit its analysis to the factual allegations contained in the SEC's amended complaint.

profits but has no legitimate claim to them.").  And "once jurisdiction over

the [relief] defendant is established[,] ... it is unnecessary to obtain subject

matter jurisdiction over [her]."  *Cherif*, 933 F.2d at 414 (citation omitted).

Here, the SEC alleges that during the period of the defendants'

fraudulent conduct—which is laid out with considerable detail and

specificity—Lynn Smith, without providing any consideration, "received

more than $1.8 million from [David] Smith and the McGinn Smith Entities,"

including "$375,000 in December 2007; $325,000 in June and July 2009;

$100,000 in March 2010; ... $185,000 in October 2006 and May 2007[;] ...

[and] many other payments from McGinn Smith Entities."  (Am. Compl. ¶¶

81, 107-08, Dkt. No. 100.)  The SEC further alleges that Lynn Smith

maintained a brokerage account at McGinn, Smith & Co, which she

"allowed [David] Smith, [Timothy] McGinn and the McGinn Smith Entities to

draw upon ... for business and personal needs without restrictions, and

[which] served as a de facto financing arm for [David] Smith and [Timothy]

McGinn and the McGinn Smith Entities during the period of the fraud."  (*Id.*

at ¶ 109.)  "L[ynn] Smith allowed [David] Smith to use the Stock Account as

a personal line of credit to further his personal and professional interests.

Internal e-mails during the period of the fraud show McGinn Smith

6

employees freely transferring money into and out of the Stock Account, which contained ill-gotten gains." (*Id.*)  In October 2002, $3 million in Charter One stock was shifted from this Stock Account to a McGinn Smith Entity account, with the Smiths as the signatories.  (*See id.* at ¶¶ 110-112.) The following year, the stock was shifted back into Lynn Smith's possession, whereafter her husband "deposited significant personal assets into the Stock Account, including cash of $38,430, the proceeds of a trust amounting to $326,304, and a note receivable totaling $410,000." (*Id.* at ¶ 113.)

By 2009—after the Financial Industry Regulatory Authority (FINRA) began investigating McGinn, Smith & Co.'s activities—"[David] Smith and L[ynn] Smith began moving assets that had been jointly held into solely L[ynn] Smith's name." (*Id.* at ¶ 115; *see also id.* at ¶ 114 (citing to an email sent by David Smith on January 14, 2009, to Timothy McGinn, which stated that "Lynn and I have to shift money around between us").)  This asset shifting, all of which was done "without consideration," included: "L[ynn] Smith open[ing] up a checking account in her name for the first time and ... depositing assets into this account which had previously been deposited into a joint account, including [David] Smith's paychecks"; and the transfer

7

of "a house in Vero Beach, Florida ... to L[ynn] Smith after being previously

held in joint ownership." (*Id.* at ¶¶ 116-18, 136-37.)  Based on these

alleged activities, the SEC claims that:

> Relief Defendant[] L[ynn] Smith ... [was a] recipient[], without
> consideration, of proceeds of the fraudulent and illegal sales of
> securities alleged[;] ... profited from such receipt or from the
> fraudulent and illegal sales of securities alleged ... by obtaining
> illegal proceeds under circumstances in which it is not just,
> equitable, or conscionable for them to retain the illegal
> proceeds[;] ... [and has] been named as a Relief Defendant for
> the amount of proceeds by which [she] has been unjustly
> enriched as a result of the fraudulent scheme or illegal sales
> transactions.

(*Id.* at ¶ 167.)  Consequently, the SEC demands that "L. Smith ... disgorge

any ill-gotten gains." (*Id.* at ¶ 18.)

In light of these allegations, the court is satisfied that the SEC has

met the two elements that qualify Lynn Smith as a relief defendant.  First,

with heightened particularity, the complaint identifies an array of unlawfully

obtained funds and assets that Lynn Smith received, oversaw, used, and

maintained in her possession.  Second, the alleged source of these funds

and assets and the manner in which they were obtained by and transferred

to Lynn Smith sufficiently establish that she does not have a legitimate

claim to them.  Therefore, the court concludes that, at a minimum,

jurisdiction exists over Lynn Smith as a relief defendant.  Lynn Smith's

motion to be dismissed as a relief defendant is denied.

## B.  <u>New York Debtor and Creditor Law</u>

Under § 276 of the New York Debtor and Creditor Law, "[e]very

conveyance made and every obligation incurred with actual intent, as

distinguished from intent presumed in law, to hinder, delay, or defraud

either present or future creditors, is fraudulent as to both present and future

creditors."  N.Y. DEBT. & CRED. LAW § 276.  "Where a conveyance ... is

fraudulent as to a creditor, such creditor, when his claim has matured, may,

as against any person except a purchaser for fair consideration without

knowledge of the fraud at the time of the purchase, ... [h]ave the

conveyance set aside ... to the extent necessary to satisfy his claim ...."  *Id.*

§ 278(1)(a).  In order to make out a claim under § 276 for fraudulent

conveyance, a party must meet FED. R. CIV. P. 9(b)'s heightened standard

by pleading with particularity an actual intent to defraud, *see Atlanta*

*Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987),

which "may be inferred from circumstantial evidence, or 'badges of fraud,'"

including:

(1) the inadequacy of consideration received in the allegedly

fraudulent conveyance; (2) the close relationship between parties to the transfer; (3) information that the transferor was rendered insolvent by the conveyance; (4) suspicious timing of transactions or existence of a pattern after the debt had been incurred or a legal action against the debtor had been threatened; or (5) the use of fictitious parties.

*Eclaire Advisor Ltd. as Tr. to Daewoo Int'l (Am.) Corp. Creditor Trust v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005) (internal quotation marks and citations omitted); *see also Hassett v. Goetzmann*, 10 F. Supp. 2d 181, 188 (N.D.N.Y. 1998).  For example, "[t]he transfer of property by the debtor to his spouse ... while retaining the use and enjoyment of the property, is a classic badge of fraud."  *In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) (citation omitted).

David and Lynn Smith created an irrevocable trust pursuant to a Declaration of Trust dated August 4, 2004.  (*See* Am. Compl. ¶ 119, Dkt. No. 100.)  The named beneficiaries of the Trust are the Smiths' children, thirty year-old Geoffrey, and twenty-eight year-old Lauren.  (*See id.*)  When the Trust was created, it had no assets.

Shortly after the Trust's creation, David and Lynn Smith entered into a Private Annuity Agreement with the Trust on August 31, 2004.  (*See id.* at ¶ 120.)  David and Lynn Smith each signed the Agreement.  (*See id.*)

10

According to the Agreement, David and Lynn Smith agreed to sell 100,000 shares of Charter One stock to the Trust in exchange for annuity payments of $489,932 per year, beginning on September 26, 2015, and ending upon the death of the surviving spouse.  (*See id.*)  The payment amount, $489,932, is based on an annuity annual interest rate of 4.6%.  (*See id.*) The Agreement was accompanied by a separate one-page addendum titled "Private Annuity" and dated September 7, 2004.  (*See id.* at ¶ 121.) The addendum sets forth a joint life expectancy for David and Lynn Smith of thirty-one years, which, when calculated from the date that the payment obligations would begin in 2015, predicts twenty years of annuity payments.  (*See id.*)  Thus, by operation of the $489,932 annual payments, the Agreement envisions David and Lynn Smith ultimately receiving almost $10 million from the Trust.  (*See id.*)

On September 1, 2004, the 100,000 shares of Charter One stock were transferred to the Trust from the Stock Account.  (*See id.* at ¶ 123.) This transfer was made on the heels of a publicly announced all-cash acquisition of Charter One by Citizens Financial Group, a deal which would result in the conversion of the 100,000 shares of Charter One stock to $4.45 million at $44.50 per share.  (*See id.* at ¶ 122.)  The deal was

completed on August 31, 2004.  (*See id.*)  Thus, on the same day that the

100,000 shares were transferred to the Trust, the buyout occurred,

whereby the Trust was instantaneously credited with $4,450,000.  (*See id.*

at ¶ 124.)

During the subsequent five and one-half years, from September 1,

2004, to April 15, 2010, the named beneficiaries, Geoffrey and Lauren

Smith, never received a distribution from the Trust.  (*See id.* at ¶ 125.)  On

April 15, 2010, Geoffrey Smith requested a distribution of $95,000.  (*See*

*id.*)  However, the $95,000 was transferred directly from the Trust to Lynn

Smith's checking account, and was allegedly used by David and Lynn

Smith to pay their personal taxes.  (*See id.*)

Based on these allegations, the SEC claims that David and Lynn

Smith's transfer of the Charter One stock to the Trust constitutes a

fraudulent conveyance that was made with the actual intent to hinder,

delay, or defraud present or future creditors.  (*See id.* at ¶¶ 126, 170.)  To

illustrate the Smiths' actual intent, the SEC alleges the following facts: (1)

the transfer occurred after the defendants became engaged in the

fraudulent conduct charged, which was underway by 2003; (2) at the time

of the transfer, David Smith's liability regarding his investors and law

enforcement was objectively foreseeable; (3) at the time of the transfer,
David Smith actually knew about his exposure to liability, as evidenced by
a handwritten note in which he states that he is "vulnerable to criminal
prosecution," that the "investments have no chance of ever being repaid in
full," that his conduct is "bordering on fraud," that he has been "misleading
both our own employees and customers," and that he "strongly believe[s]
that in civil or criminal litigation we would lose badly"; (4) in December
2003, David and Lynn Smith, among others, had been named as
defendants in a securities fraud suit filed in the United States District Court
for the Southern District of New York, *Meyers v. Integrated Alarm Servs.
Grp., Inc.*, No. 03-cv-09748; (5) David and Lynn Smith knowingly made the
transfer on the day of the Charter One buyout in order to shelter the large
sum of $4.5 million in cash; (6) on February 26, 2004, the SEC's Broker-
Dealer Inspection Program notified Smith by letter that, after conducting an
examination of McGinn, Smith & Co., it had found various "deficiencies
and/or violations of law"; and (7) in the early stages of this matter, David
and Lynn Smith inexplicably concealed the existence of the Private Annuity
Agreement.  (*See id.* at ¶¶ 127-33.)

Consequently, the SEC contends that the Trust received fraudulently

conveyed assets, and that the disbursements received by Geoffrey and Lauren Smith after July 7, 2010, also constitute fraudulently conveyed assets.  (*See id.* at ¶¶ 171-72.)

## 1.    The SEC as a Creditor

Preliminarily, Lynn Smith and the Trust, Geoffrey Smith, and Lauren Smith (Trust defendants) challenge the SEC's standing as a creditor under § 276.  (*See* Lynn Smith Mem. of Law at 22-25, Dkt. No. 224:1; Trust Defs. Mem. of Law at 11-12, Dkt. No. 283:1.)  In response, the SEC offers a meager series of what can at best be categorized as either "analogous" cases[6] or cases that "implicitly" recognize the SEC as a creditor.[7]  (*See* Pl. Reply Mem. of Law at 12-13, Dkt. No. 249.)  Notwithstanding the parties' cursory treatment of this issue, the court finds that the SEC qualifies as a creditor under § 276 to the extent that, if successful on the claims asserted,

---

[6]*See, e.g.*, *United States v. Kaplan*, 267 F.2d 114, 117 (2d Cir. 1959) (finding that the government is a creditor where it is seeking to recover unpaid distilled spirits taxes); *United States v. Hansel*, 42 F. Supp. 2d 201, 203 (N.D.N.Y. 1999) (finding that the Internal Revenue Service is a creditor where it is seeking to recover unpaid tax deficiencies); *Crabb v. Mager's Estate*, 66 A.D.2d 20, 24 (4th Dep't 1979) (finding that county social services commissioner is a creditor where it is seeking to recover erroneously distributed medical assistance benefits).

[7]*See, e.g.*, *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 230 (2d Cir. 2010) (certifying to the New York Court of Appeals questions of law regarding the SEC's fraudulent conveyance claim without questioning whether the SEC constitutes a creditor); *SEC v. Shainberg*, No. 07 Civ. 8814, 2010 WL 972204, at *3-4 (S.D.N.Y. Mar. 17, 2010) (entertaining the merits of the SEC's fraudulent conveyance claim without addressing whether the SEC constitutes a creditor).

it will be seeking to recover on a consequent civil penalty judgment.

The Debtor and Creditor Law defines a "creditor" as "a person having a claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."  N.Y. DEBT. & CRED. LAW § 270.  Mirroring "creditor," the term "debt" is defined to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."  *Id.*  These terms, "creditor" and "debt," enjoy broad application.  *See Amalgamated Bank of N.Y. v. Marsh*, 823 F. Supp. 209, 222 (S.D.N.Y. 1993); *see also Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765, 771-72 (E.D.N.Y. 1995); *Shelly v. Doe*, 249 A.D.2d 756, 757 (3d Dep't 1998).  As a result, "one who has a legal right to damages capable of enforcement by judicial process, is a creditor." *Marcus v. Kane*, 18 F.2d 722, 723 (2d Cir. 1927) (citations omitted); *see also Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006) ("Under New York's broad definition of 'creditor,' one who has a right to maintain a [civil] action but has not recovered judgment at the time of the transfer is a creditor ...." (citing *Marcus*, 18 F.2d at 723)).  Thus, the Debtor and Creditor Law abrogates "the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against a fraudulent

15

conveyance," and allows a plaintiff "without attachment or execution, [to] establish [its] debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit." *Am. Sur. Co. of N.Y. v. Conner*, 251 N.Y. 1, 7-8 (N.Y. 1929).  Importantly though, in seeking to set aside a fraudulent conveyance, a creditor is limited to the value of its claim, and may not act in a representative capacity.  *See* N.Y. DEBT. & CRED. LAW § 270; *see also Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) ("[T]he liability ... is limited to a judgment in the amount of monies 'wrongfully received,' regardless of the total amount of the conveyance(s)." (citation omitted)); *De West Realty Corp. v. IRS*, 418 F. Supp. 1274, 1279 (S.D.N.Y. 1976) ("If a conveyance is fraudulent ... a creditor may obtain judgment ... up to the value of the property, but not exceeding the amount of the creditor's claim." (citation omitted)); *Soc'y Milion Athena v. Nat'l Bank of Greece*, 281 N.Y. 282, 293 (N.Y. 1939) ("[The plaintiff] is not entitled to a judgment setting [the conveyance] aside completely and subjecting the property to the claims of other creditors through a receiver and judicial administration of the affairs of the debtor ...."); *Gruenebaum v. Lissauer*, 185 Misc. 718, 728 (N.Y. Sup. Ct. 1945) ("Plaintiff may act in his own right alone."); *cf. Eberhard v. Marcu*, 530 F.3d 122, 131-34 (2d Cir. 2008)

16

(holding that a receiver's standing to maintain a set aside action is prescribed by the receivership entity's own rights and status as a creditor).

At this juncture, the court is satisfied that the SEC falls within the definition of "creditor" under the Debtor and Creditor Act.  First, the SEC clearly has a legal right, and obligation, to initiate a civil enforcement action under the circumstances alleged.  Second, the SEC's action exposes the defendants, including David and Lynn Smith, to significant legal liability which, upon judgment, would constitute a "debt" under § 270.  (*See* Pl. Reply Mem. of Law at 13, Dkt. No. 249 ("[T]hese profits remain a debt owed by culpable defendants to the government.")).  Therefore, the court finds that, in the present context, the SEC stands as a creditor under the New York Debtor and Creditor Law.  *See In re Hodge*, 216 B.R. 932, 936 (Bankr. S.D. Ohio 1998) (finding that the "SEC, as the public agent responsible for enforcing the securities laws, comes within the ambit of a creditor to whom the disgorgement judgment is owed" even though "[p]ayment of the disgorgement and civil penalty judgments were to be made to the U.S. District Court and the U.S. Treasury").  To hold otherwise would likely narrow the intended scope of § 276 and "unduly hinder enforcement of the Securities Act."  *In re Maio*, 176 B.R. 170, 171-72

17

(Bankr. S.D. Ind. 1994).

## 2.    Fraudulent Conveyance

Largely in reliance on Magistrate Judge Homer's July 7 and November 22, 2010 Orders and the "law of the case" doctrine, Lynn Smith and the Trust defendants insist that the Trust assets are untainted and that the stock transfer was made with adequate consideration.  (*See* Lynn Smith Mem. of Law at 2, 18-21, Dkt. No. 224:1; Trust Defs. Mem. of Law at 1-2, 7-11, Dkt. No. 283:1.)  In addition, the Trust Defendants argue that the SEC has not adequately alleged a cause of action against Geoffrey Smith and Lauren Smith as Trust beneficiaries.  (*See* Trust Defs. Mem. of Law at 12-16, Dkt. No. 283:1.)  The court rejects defendants' assertions that the Trust's assets are definitively untainted and were obtained with adequate consideration, for such assertions are both contradicted by the complaint and unsupported by, if not inconsistent with, Judge Homer's findings.  As to Lynn Smith, the SEC has sufficiently alleged a claim against her for her involvement in a catalogue of fraudulent conveyances.  However, as to the SEC's fraudulent conveyance claims against Lauren Smith and Geoffrey Smith in his individual capacity, the court finds that the SEC has failed to adequately plead a factual basis for such a claim.

18

### a.   The Law of the Case Doctrine

Both parties rely on the "law of the case" doctrine, not surprisingly where it helps their respective cases.  However, the court is generally reluctant to apply the law of the case doctrine at this point in the action. The law of the case doctrine applies in two distinct circumstances.  The first, which clearly is not present here, is where an issue has been "expressly or impliedly decided by the appellate court."  *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) (internal quotation marks and citation omitted).  The second circumstance in which the law of the case doctrine applies is where a court is presented with an issue that it has already ruled on.  "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (citation omitted).  And the court should "adhere to its own prior rulings in a given case absent cogent or compelling reasons to deviate, such as an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Id.* (internal quotation marks and citations omitted).

Here, following a period of limited preliminary discovery, Judge

19

Homer conducted an evidentiary hearing and made a series of rulings regarding the appropriateness of freezing various assets, including those contained in the Trust.  (*See generally* July 7, 2010 Order, Dkt. No. 86.)  As to the Trust, Judge Homer initially found that the SEC failed to demonstrate a substantial likelihood that the Trust was created with ill-gotten gains or that David Smith was a beneficial owner of the Trust.  (*See id.* at 37.)  The SEC thereafter filed a motion with the court to reconsider its rulings regarding the Trust's assets, which was granted on two alternative grounds, namely, fraud, misrepresentation, or misconduct, and the existence of newly discovered evidence.  (*See* Nov. 22, 2010 Order at 20 & n.17, Dkt. No. 194 (citing FED. R. CIV. P. 60(b)(2) & (3)).)  In reconsidering its prior ruling, the court granted the SEC's motion for a preliminary injunction freezing the assets of the Trust, finding that there was a substantial likelihood that David Smith possessed a substantial equitable and beneficial interest in the Trust.  (*See id.* at 21-23.)  But, while the court's findings extended to David and Lynn Smith's fraudulent intent in creating the Trust, (*see id.* at 22), Judge Homer's findings were not boundless; to the contrary, they were based on proof extracted from a condensed discovery, governed by the "substantial showing of likelihood of

success" standard, and confined to evaluating the assets' susceptibility to freezing.  Thus, in light of these limitations, and because the pending motions implicate the adequacy of the SEC's pleadings regarding distinct issues, reliance on the law of the case doctrine here would seem to offend the well-settled principle that the doctrine be "only addressed to its good sense."[8]  *Higgins v. Cal. Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir. 1924) (citations omitted); *see also City of Anaheim v. Duncan*, 658 F.2d 1326, 1328 n.2 (9th Cir. 1981) ("[A] decision on a preliminary injunction does not constitute the law of the case ...." (citation omitted)); *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974) ("The decision of a ... court whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings ...." (citations omitted)); *Garten v. Hochman*, No. 08 Civ. 9425, 2010 WL 2465479, at *3 n.1 (S.D.N.Y. June 16, 2010) ("[T]he law of the case doctrine is not typically applied in connection with preliminary determinations, such as a ruling on a motion for a preliminary injunction." (citation omitted)); *see, e.g.*, *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 443 (S.D.N.Y. 2006) (finding the law

---

[8]Regardless of the applicability or non-applicability of the law of the case doctrine, the court is confident that its findings are entirely consistent with those of Judge Homer.

of the case doctrine inapplicable where the court ruled on a summary

judgment motion "before any meaningful discovery," and was later

presented with a summary judgment motion after discovery had been

completed).

**b.    The Trust and the Transfers**

The complaint more than adequately sets forth several asset

transfers involving David and Lynn Smith that, as alleged, could constitute

fraudulent conveyances under § 276.  As discussed at length above, the

SEC alleges that, in addition to receiving large sums of money, Lynn Smith

took sole ownership of the Vero Beach house in 2009 without any

legitimate explanation or exchange of valid consideration.  Based on the

circumstances surrounding these money and property transfers, there is no

question that the SEC has met FED. R. CIV. P. 9(b)'s heightened pleading

burden regarding David and Lynn Smith's actual intent to hinder, delay, or

defraud present or future creditors.  Specifically, the SEC proffers the

following "badges of fraud": (1) the lack of any apparent consideration for

the transfers; (2) as husband and wife, David and Lynn Smith's relationship

was one of paramount closeness; (3) the suspicious timing of the transfers,

which took place either during the perpetration of or in response to the

unraveling and impending discovery of David Smith and Timothy McGinn's pandemic fraud; (4) David Smith's constructive and actual knowledge that the fraud would be discovered, that he would be subject to his investors and creditors' claims, and that he was being investigated and facing possible civil and criminal charges; (5) the commencement, and subsequent settlement, of a securities fraud suit against David and Lynn Smith in December 2003; and (6) David Smith's continued use and enjoyment of the property after its transfer.

The SEC further alleges that David and Lynn Smith fraudulently transferred the 100,000 shares of Charter One stock to the Trust.  To demonstrate David and Lynn Smith's actual intent to hinder, delay, or defraud creditors, the SEC asserts the same badges of fraud, including that the stock transfer was made without any consideration.  In response, the Trust defendants contend that the stock transfer was made by David and Lynn Smith in exchange for the annuity payments, which constitutes valid consideration.  (*See* Trust Defs. Mem. of Law at 12-14, Dkt. No. 283:1.) The Trust defendants' contention is without merit.[9]  The facts as alleged by

---

[9]For the most part, the cases cited by the Trust defendants are either substantively or procedurally inapposite.  *See, e.g.*, *In re Sharp Int'l Corp.*, 281 B.R. 506, 521-24 (Bankr. E.D.N.Y. 2002) (rejecting § 276 fraudulent conveyance claim where the plaintiff did not allege any badges of fraud, where the conveyance was made to an actual creditor, and where the

the SEC evidence a complete lack of good faith exercised by David and

Lynn Smith in creating, funding, and structuring the Trust.[10]  *See* N.Y.

DEBT. & CRED. LAW § 272(a) ("Fair consideration is given for property, or

obligation ... [w]hen in exchange for such property, or obligation, as a fair

equivalent therefor, and in good faith, property is conveyed and an

antecedent debt is satisfied ...."); *see also United States v. McCombs*, 30

F.3d 310, 328 (2d Cir. 1994) ("[W]here actual intent to defraud creditors is

proven, the conveyance will be set aside regardless of the adequacy of

consideration given.").  In addition to this lack of good faith and the

---

conveyance did not adversely affect the plaintiff's ability to repay its other creditors); *Weiser v. Kling*, 38 A.D. 266, 268-69 (1st Dep't 1899) (acknowledging that if a defendant affirmatively establishes that he was a purchaser for fair consideration, then the plaintiff has the additional burden to prove that the purchaser had previous notice of the seller's fraudulent intent).

Insofar as the Trust defendants rely on *Gutierrez v. Bernard*, 55 A.D.3d 384 (1st Dep't 2008), for the proposition that "'the thing disposed of must be of value, out of which the creditor could have realized all, or a portion of his claim,'" 55 A.D.3d at 385 (quoting *Hoyt v. Godfrey*, 88 N.Y. 669 670 (N.Y. 1882)), such reliance is misplaced.  (*See* Trust Defs. Mem. of Law at 7, Dkt. No. 283:1; Trust Defs. Reply Letter Br. at 2, Dkt. No. 318.)  As the court has discussed at length, the SEC has adequately alleged under both federal and state law its potential entitlement to assets held in or transferred out of David Smith and Lynn Smith's possession.  Judge Homer's findings neither support nor command a different conclusion.

[10]This conclusion is reinforced, though not compelled, by Judge Homer's finding that "David Smith possessed an equitable and beneficial interest in the Trust through the Annuity Agreement and that his conduct in controlling the investments of Trust assets by the Trustee, paying the Trust's taxes, and, with [Lynn Smith], paying the living expenses of his adult child was to protect the assets of the Trust to insure their existence when the Annuity Agreement payments were to commence and not simply to protect those assets for the use of his children." (Nov. 22, 2010 Order at 21, Dkt. No. 194.)

Moreover, the factual allegations contained in the complaint, when considered in conjunction with Judge Homer's findings regarding the conduct of the Trust representatives, (*see id.* at 3, 7-8, 18), also raise serious questions about the Trust's good faith.

24

generally suspicious timing of the creation of the Trust, the SEC highlights

the particularly suspicious timing and nature of the stock transfer, which

David and Lynn Smith knowingly consummated on *the* day that the stock

would be converted to $4.45 million cash.  Furthermore, this transfer

essentially emptied the Stock Account of its dominant asset.  (*See* Am.

Compl. ¶¶ 110, 112, 120, Dkt. No. 100.)  And although David and Lynn

Smith's interest in the Trust's assets did not ostensibly vest until 2015, the

Private Annuity Agreement clearly contemplates David and Lynn Smith's

long-term access to and interest in the Trust's assets.  Thus, the stock

transfer is equally clouded in potential fraud.

Therefore, the court finds that the SEC has successfully alleged

claims of fraudulent conveyance against Lynn Smith for the property

transferred to her by David Smith, and against the Trust for the Charter

One stock transferred to it by David and Lynn Smith.

c.    **Disbursements to the Beneficiaries**

Notwithstanding the Trust's amenability to suit under § 276, the SEC

has failed to lay a foundation for the claims asserted against Lauren Smith

and Geoffrey Smith individually.  The lone allegation against Geoffrey

Smith and Lauren Smith is that they "received funds after July 7, 2010 that

had been fraudulently conveyed to the Smith Trust."[11]  (Am. Compl. ¶ 172, Dkt. No. 100.)  Without any allegation regarding the intent of the Trust as the transferor, the details of the transfers, or the conduct and knowledge of Geoffrey Smith and Lauren Smith as the transferees, the claims against Geoffrey Smith and Lauren Smith cannot withstand any level of scrutiny under Rule 12(b)(6) and are therefore dismissed.[12]

However, in light of the evidence on record and the SEC's request to "be allowed to replead in the event [that] any portion of the motion to dismiss filed by the Trust [defendants] ... is granted," (*see* Pl. Reply Mem. of Law at 8, Dkt. No. 313), the court grants the SEC limited leave to amend its complaint to assert a sufficient factual basis for Geoffrey Smith and Lauren Smith's liability under § 276.

## 3.  Original and Supplemental Jurisdiction

To the extent that Lynn Smith or the Trust defendants contend that

---

[11]As already indicated by the court, the SEC alleges that on April 15, 2010, Geoffrey Smith "requested a distribution of $95,000, which he testified was to give to his parents to pay their personal taxes."  (Am. Compl. ¶ 125, Dkt. No. 100.)  The SEC admits that "[t]he funds were transferred directly from the Smith Trust to L[ynn] Smith's checking account."  (*Id.*)  Accordingly, this distribution could not serve as a basis for a fraudulent conveyance claim against Geoffrey Smith for several reasons, not least of which is that he never actually received or retained those funds.

[12]The specter of bad faith that hangs over the Trust is not enough to substantiate this set of otherwise bare claims.

this court does not have, or should not exercise, jurisdiction over the fraudulent conveyance claims, that contention is rejected.  First, district courts "have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1345; *see also Fed. Sav. & Loan Ins. Corp. v. Ticktin*, 490 U.S. 82, 84-85 (1989).  As this action was commenced by the SEC, which is a federal agency expressly authorized to commence civil suits, *see* 15 U.S.C. §§ 77t(d), 78u(d)(3), 80a-41(e)(1), 80b-9(e)(1), the court has original jurisdiction over the claims asserted.  Second, even if the fraudulent conveyance claims fell outside the reach of § 1345, the court would still exercise supplemental jurisdiction over the fraudulent conveyance claims pursuant to 28 U.S.C. § 1367(a), since the facts underlying the fraudulent conveyances are closely related to and substantially overlap with the securities violations levied against the main defendants.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact.").  Therefore, because the fraudulent conveyances alleged constituted part of, or a further step in, the overarching fraud alleged, the court finds that supplemental jurisdiction

27

over the state-law fraudulent conveyance claims is proper, and accordingly

rejects any remaining arguments about whether such jurisdiction exists or

should be exercised.

## IV.  **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Lynn Smith's motion to dismiss (Dkt. No. 224) is

**DENIED**; and it is further

**ORDERED** that the Trust, Geoffrey Smith, and Lauren Smith's

motion to dismiss (Dkt. No. 283) is **GRANTED** in part as to the fraudulent

conveyance claims against Lauren Smith and Geoffrey Smith in his

individual capacity; and it is further

**ORDERED** that the Trust, Geoffrey Smith, and Lauren Smith's

motion to dismiss (Dkt. No. 283) is **DENIED** in part as to the fraudulent

conveyance claim against the Trust; and it is further

**ORDERED** that the SEC is **GRANTED** limited leave to re-amend its

complaint, in full compliance with the terms of this Order, **within thirty (30)**

**days** from the date of the filing of this Order, after which Geoffrey Smith

and Lauren Smith shall respond to the complaint as permitted under the

Federal Rules of Civil Procedure; and it is further

28

**ORDERED** that if the SEC fails to file an amended complaint **within thirty (30) days** from the date of the filing of this Order, the Clerk of the Court shall enter judgment dismissing Geoffrey Smith and Lauren Smith from this action without further order of the court; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 6, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge