**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

            v.                                              No. 10-CV-457
                                                              (GLS/DRH)
TIMOTHY M. McGINN; DAVID L. SMITH;
and GEOFFREY R. SMITH, Trustee of the
David L.  and Lynn A. Smith Irrevocable
Trust U/A 8/04/04,

                              Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

DAVID STOELTING, ESQ.                   KEVIN McGRATH, ESQ.
Attorney for Plaintiff                       LARA MEHREBAN, ESQ,
Room 400                                    JOSHUA M. NEWVILLE, ESQ.
3 World Financial Center
New York, New York 10281

DREYER BOYAJIAN LLP                    WILLIAM J. DREYER, ESQ.
Attorney for Defendant David Smith
75 Columbia Street
Albany, New York 12210

E. STEWART JONES, PLLC                  JAMES C. KNOX, ESQ.
Attorney for Defendant Timothy McGinn
29 Second Street
Troy, New York 12180

FEATHERSTONHAUGH, WILEY &          JAMES D. FEATHERSTONHAUGH, ESQ.
    CLYNE, LLP                             SCOTT J. ELY, ESQ.
Attorney for Defendant Trust
Suite 207
99 Pine Street
Albany, New York 12207

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

On July 7, 2010, an order was entered granting in part the motion of plaintiff

Securities and Exchange Commission (SEC) for a preliminary injunction freezing certain

assets of the defendants for the benefit of investors pending the outcome of this action.

Dkt. No. 86 ("MDO I").  Presently pending are the motions of defendants Timothy M.

McGinn ("McGinn"), David L. Smith ("Smith"), and Geoffrey R. Smith, Trustee of the David

L.  and Lynn A. Smith Irrevocable Trust U/A 8/04/04 ("Trust") for orders releasing assets

from the preliminary injunction.  Dkt. Nos. 439-41.  The SEC opposes the motions.  Dkt.

Nos. 447, 448.  For the reasons which follow, the motions of McGinn and Smith are

granted in part and denied in part, and the Trust's motion is denied in its entirety.


## I. Background

The SEC commenced this action on April 20, 2010 with the filing of a complaint

alleging that McGinn and Smith operated an Albany-based financial services company and

related entities through which they defrauded investors of over $80 million in violation of §

17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); § 10(b) of the Securities Exchange

Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5 under the 1934 act, 17 C.F.R. § 240.10b-5;

and related provisions.  Compl. (Dkt. No. 1) at ¶¶ 7-12.  In decisions filed July 7 and

November 22, 2010, familiarity with which is assumed, the SEC's motion for a preliminary

injunction was granted in principal part freezing the assets of McGinn and Smith, including

the Trust.  MDO I; Dkt. Nos. 96 (preliminary injunction), 194 ("MDO II").  Those assets

remain frozen pending resolution of this action.

As part of a criminal investigation into the activities of McGinn and Smith, federal

law enforcement authorities executed a series of search warrants at the residences and

businesses of McGinn and Smith on April 19 and 20, 2010.  MDO I at 6 n.10.  The criminal

investigation proceeded as this civil action progressed through discovery, ending in the

return of an indictment against McGinn and Smith on January 26, 2012 for charges related

to the subject matter of this action.  See United States v. McGinn, No. 12-CR-28 (DNH)

(N.D.N.Y. filed Jan. 26, 2012).  McGinn and Smith entered pleas of not guilty to those

charges and the case is now proceeding through its initial stages.  Discovery has been

completed in this action and, as dispositive motions were due to be filed, the motion of

intervenor United States was granted staying this action pending completion of the criminal

action.  Dkt. No. 474.  McGinn and Smith are each represented by the same counsel in

both the civil and criminal actions.


## II. Discussion

### A. McGinn and Smith Motions

McGinn and Smith both seek orders unfreezing assets to pay the costs of their

defenses against the criminal charges, including their attorneys' fees.  Dkt. Nos. 439, 440.

Both men estimate that each will require at least $300,000.00 to pay the attorneys' fees

and costs arising from the criminal indictment through the trial of that case.  Knox Decl.

(Dkt. No. 439-3) at ¶ 9; Dreyer Decl.(Dkt. No. 440-3) at ¶¶ 9-14.  Each asserts that

because of the asset freeze, each lacks sufficient resources to pay the attorneys whom

they have retained to represent them in the criminal case.  McGinn Decl. (Dkt. No. 439-2)

at ¶ 12; Smith Decl. (Dkt. No. 440-2) at ¶ 8.  Both seek orders releasing certain assets

from the asset freeze to pay attorneys' fees and costs.

The preliminary injunction freezing the defendants' assets was entered to insure the availability of those assets to compensate the alleged victims of defendants' conduct in the event the SEC prevails in this action.  See MDO I at 12-15. It was entered upon a showing by the SEC, in part, that the SEC was likely to prevail on the merits of its claims as to McGinn and Smith.  Id. at 27-31.  Where, as here, those charged with criminal offenses seek to lift an asset freeze to obtain funds for the payment of legal fees and costs, there is brought into conflict the competing interests of allegedly defrauded investors in obtaining the return of funds and those of the criminal defendants under the Fifth and Sixth Amendments in obtaining sufficient funds to retain the counsel of their choice.

In United States v. Monsanto, 491 U.S. 600 (1989), the criminal defendant was charged with narcotics offenses and the government obtained an order restraining his assets for possible criminal forfeiture as proceeds of criminal activity.  The defendant sought to use those assets to pay legal fees.   The Supreme Court held that while a criminal defendant has the Sixth Amendment right to retain the counsel of his or her choice, the defendant may not use funds obtained from criminal activity to do so.  Id. at 603; S.E.C. v. Cherif, 933 F.2d 403, 416-17 (7th Cir. 1991) (holding that a criminal defendant may not "spend another person's money" to retain counsel).  On remand, the Second Circuit Court of Appeals held that such a restraint could be continued only where the government demonstrated that the assets being restrained were the proceeds of criminal activity even where a defendant demonstrated a need to obtain funds from the assets to retain counsel to defend the criminal charges.  United States v. Monsanto, 924 F.2d 1186, 1203 (2d Cir. 1991).

In S.E.C. v. Coates, No. 94 CIV. 5361 (KMW), 1994 WL 455558 (S.D.N.Y. Aug. 23,

4

1994), as here, the defendant in a civil enforcement action brought by the SEC was also named as a defendant in a parallel criminal action.  The defendant moved to release certain assets subject to a preliminary injunction to retain an attorney in the criminal proceeding.  Id. at *3.  The court held that on such a motion, the factors considered in Monsanto for criminal cases applied equally in an SEC civil enforcement action and, therefore, assets should continue to be restrained if traceable to criminal activity but, if not, could be released to permit a criminal defendant to retain the counsel of his or her choice. Id.  Coates has repeatedly been cited by other courts in the Southern District where such actions most frequently arise as persuasive authority for the applicable analysis in these circumstances.  See, e.g., United States v. Bonventre, No.S2 10 Cr. 228(LTS), 2011 WL 1197853, at *6 (S.D.N.Y. Mar. 30, 2011); S.E.C. v. FTC Capital Markets, Inc., No.09 Civ. 4755(PGG), 2010 WL 2652405, at *3 (S.D.N.Y. June 30, 2010); S.E.C. v. Cobalt Multifamily Investors, ILLC, No. 06Civ.2360(KMW)(MHD), 2007 WL 1040309, at *3 n.10 (S.D.N.Y. Apr. 2, 2007).

Thus, where a defendant in a civil enforcement action seeks to lift an asset freeze to retain counsel in a parallel criminal action, a court must determine whether (1) the defendant has demonstrated a need for the relief; (2) if so, the defendant has demonstrated that the assets for which release is sought are traceable to criminal activity; and (3) the defendant has shown that the value of the assets sought to be released is reasonable.

**1. Necessity**

As to the first factor, both McGinn and Smith have demonstrated a need for the

release of assets to pay counsel in their criminal case.

**a. McGinn**

McGinn now resides in Boca Raton, Florida with his wife.  McGinn Decl. at ¶¶ 1, 7.

He earns approximately $2,800 monthly as a sales representative and receives an

additional monthly amount of $1,876 from Social Security.  Id. at ¶¶ 5, 6.  His wife, also a

defendant in this civil action, currently receives $375 monthly in unemployment benefits.

Id. at ¶ 7.  Against this approximate monthly income of $5,051, McGinn and his wife pay

monthly expenses of approximately $4,500.  Id. at ¶ 8.  Even if his wife's unemployment

benefits were to continue without end and they incurred no additional expenses beyond

their normal monthly expenses, Smith still falls far short of possessing sufficient

unrestrained resources to pay any legal fees and costs reasonably incurred in his criminal

case.[1]

---

[1]The SEC contends that if the Court finds McGinn's representations sufficient, an evidentiary hearing should be scheduled to permit the SEC to examine the credibility of these assertions.  However, the SEC has had two years to investigate and discover whatever may be relevant to McGinn's financial condition, including financial and business records seized by law enforcement authorities through search warrants and depositions of McGinn and his wife, also a defendant in this action.  If the SEC possessed any evidence contradicting McGinn's assertions, they would no doubt have presented it in opposition to this motion.  No contradictory evidence has been presented and, therefore, no question of fact has been raised necessitating an evidentiary hearing.  The fact alone that McGinn was previously found in contempt of the preliminary injunction for his conduct of a new business enterprise, without more, will not suffice to undermine the credibility of McGinn's representations as to his financial condition.  See Dkt. No. 207 (decision finding McGinn in contempt of preliminary injunction).  Accordingly, the SEC's request for an evidentiary hearing as to McGinn's financial condition is denied.

**b. Smith**

For his part, Smith currently has no source of income.  Smith Decl. at ¶ 5.[2]  It further

appears at this point that the SEC has brought within the reach of the preliminary

injunction all assets in which Smith holds any interest which could reasonably be used to

pay legal costs and fees.  No other means of paying those costs and fees appears nor has

any been suggested by the SEC.  Accordingly, Smith as well has met his burden of

demonstrating a need for the relief sought here.[3]

**2. Taint**

**a. McGinn**

As to the second factor, McGinn identifies ten assets from which he contends he

could obtain approximately $128,330 upon their liquidation.  McGinn Decl. at Sch. A.

_____

[2]Smith advises that his principal residence is now in foreclosure for nonpayment of the mortgage.  Smith Reply Decl. (Dkt. No. 456-1) at ¶ 5.

[3]The SEC also requests an evidentiary hearing as to Smith's representations of need if found sufficient by the Court.  As to Smith, however, the SEC proffers evidence that would undermine the credibility of his representations.  The SEC first asserts that from July to September, 2011, Smith and his wife rented their residence in Saratoga County during the local horse racing season for a total of $14,000 which neither Smith nor his wife have ever disclosed.  Stoelting Decl. (Dkt. No. 448-1) at ¶ 2.  Second, the SEC asserts that in the Summer of 2011, the Smiths paid $3,338.40 for an engagement party at a Saratoga-area golf course.  Id. at ¶ 3.  Smith has not denied these assertions.  See Smith Reply Decl.  While this conduct in fact undermines the credibility of Smith's assertions, notwithstanding Smith's diminished credibility, it remains clear from this record that Smith lacks access to sufficient unrestrained resources to pay even a minimal portion of the legal fees and costs he is likely to incur in defending the criminal case.  The SEC has proffered no other evidence to indicate the existence of other resources from which Smith might draw to meet legal expenses and, therefore, no question of fact has been raised to warrant an evidentiary hearing.  Accordingly, the SEC's request as to Smith on this issue is also denied.

Those assets are as follows:

1. Timeshare unit in Colorado
   a. Purchased in 1991.
   b. Estimated value: $35,000
   c. Likely proceeds: $25,000

2. Antique Chinese war lord desk
   a. Purchased in 1995
   b. Estimated value: $15,000
   c. Likely proceeds: $5,000

3. Nine oriental rugs
   a. Purchased 1997 through 2007
   b. Estimated. value: $64,000
   c. Likely proceeds: $25,000

4. Pine Tree Golf Club membership bond
   a. Purchased in 2000
   b. Estimated value: $10,000
   c. Likely proceeds: $7,000

5. Waterville Golf Links membership initiation fee
   a. Purchased in 2003
   b. Estimated value: $25,000
   c. Likely proceeds: $20,000

6. Watches and jewelry
   a. Purchased 2002 through 2006
   b. Estimated value: $10,000
   c. Likely proceeds: $3,500

7. Boca Raton residence
   a. Purchased in 2007
   b. Estimated value: $495,000 less commission; ($29,700) less debt and taxes ($425,000) leaving an estimated net equity of $40,300
   c. Likely proceeds: $20,000

8. Furniture and personal property at Boca Raton residence
   a. Purchased in 2007
   b. Estimated value: $10,000
   c. Likely proceeds: $6,000

9. Bank account:
   a. Value: $9,480

8

    10. Retirement Account
         a. Value: $7,350

TOTAL:
Estimated value: $231,130
Likely proceeds: $128,330

Id.

        The amended complaint in this action alleges that the unlawful conduct of McGinn

and Smith commenced in September 2003.  Am Compl. (Dkt. No. 100) at ¶ 34.  In

granting the SEC's motion for the preliminary injunction, the Court found a substantial

likelihood that the SEC would succeed in proving this allegation.  MDO I at 30-31.  The

SEC now contends that any asset acquired or maintained by McGinn after September

2003 is subject to disgorgement for the benefit of investors, whether as the proceeds of

McGinn's unlawful activities or because unlawful proceeds were commingled with

untainted assets to such an extent that tainted and untainted funds became

indistinguishable.  Pl. Mem. of Law (Dkt. No. 448) at 12-13.  The SEC does not challenge

McGinn's motion as to McGinn's retirement account (Item No. 10) and appears not to

object to the sale of the Boca Raton residence (Item No. 7).  Id. (arguing that the property

is tainted from its maintenance through unlawful proceeds but stating that the asset likely

has no value and the SEC would support its sale).  The Receiver, but not the SEC, asserts

that there is no evidence that (1) the desk or rugs (Item Nos. 2 and 3) belong to McGinn

rather than to the defendant business entities, and (2) the two golf club memberships

(Item Nos. 4 and 5) were purchased with McGinn's personal funds rather than those of the

defendant business entities.  Receiver's statement (Dkt. No. 465) at ¶ 5(a) & (b).  Neither

the SEC nor the Receiver challenges the timeshare unit, jewelry, or the household

9

furniture (Item Nos. 1, 6, and 8).[4]  The SEC does contend that the bank account (Item No. 9) is tainted.  Pl. Mem. of Law at 13.

As to the bank account, the SEC has proffered evidence that the $9,480 in the account when it was frozen on April 20, 2010 derived from unlawful activities and is, therefore, tainted.  See Palen Decl. (Dkt. No. 448-2) at ¶¶ 6-7.  This evidence suffices to satisfy the SEC's burden of demonstrating taint and McGinn's motion as to this bank account will be denied.  As to the other nine items for which McGinn has sought release from the asset freeze, however, the SEC has either not opposed McGinn's motion or has only raised questions about possible taint, which fails to satisfy its burden of demonstrating taint.  Accordingly, McGinn's motion as to the other nine items will be granted.

### b. Smith

Smith and his family own a variety of assets totaling in value over $7 million.  MDO I at 6-12; Smith Decl. at ¶ 7.  Most are frozen directly by the preliminary injunction.  See MDO I, MDO II.  Others, such as retirement accounts, are beyond the reach of the asset freeze by operation of law unless and until Smith withdraws the funds into his possession at which point they become subject to the asset freeze.  See Dkt. No. 221 at 3-4 (denying Smith's motion to release a retirement account).  Thus, such assets remain in legal limbo

---

[4]Certain of the rugs and jewelry, the furniture, and the Boca Raton residence were acquired after September 2003.  McGinn Decl., Sch. A.  This would appear to afford the SEC a basis for arguing their taint, but no such argument is made here.  It does not appear that the Receiver has taken any steps to take possession of or liquidate those items to date, possibly because a cost-benefit analysis leads to the conclusion that it would cost more to do so than would likely be obtained from their liquidation.  In any event, no claim of taint has been asserted with respect to these items.

for the foreseeable future.  Those assets remain beyond the reach of the SEC unless

Smith chooses to withdraw funds from those accounts, which Smith has no present

incentive to do, and beyond Smith's reach as a practical matter, since the SEC will restrain

any withdrawn funds at the moment of their withdrawal.

Smith makes several arguments in support of his motion.  First, he contends that,

even if the SEC prevails on all its claims against him, the amount of the proceeds he is

alleged to have received from unlawful activity is no more than $1.5 million and, since his

assets in total greatly exceed this amount, sufficient funds exist to insure full payment of

any judgment even if the requested assets are released for his legal costs.  Smith Reply

Decl. at ¶¶ 14-17.  In this action, however, the SEC alleges a loss to investors of at least

$80 million, which represents the maximum possible judgment against Smith.  See Am.

Compl. at ¶ 1 & pp. 41-44.  Therefore, on this record, it appears that the amount of Smith's

assets subject to the asset forfeiture still falls far short of the amount which the SEC has

demonstrated will likely be ordered disgorged at the conclusion of this action.

Smith also seeks release of assets which have already been found  subject to the

preliminary injunction.  These include the stock account, certain real property, and a trust

account.  See MDO I, MDO II.   All of these assets have previously been the subject of

extensive litigation in this action, the SEC has demonstrated that all are properly subject to

the asset freeze, and the evidence as to all demonstrates that all are tainted either as the

proceeds of unlawful activity or as so commingled in unlawful proceeds that any untainted

portions cannot reasonably be severed.  See MDO I, MDO II.  Smith's motion as to these

assets, therefore, is denied.

A different record is presented as to Smith's retirement accounts, however.

11

According to Smith, his 401-k account has a present value of $310,000.  Smith Decl. at ¶

7.  The SEC has proffered evidence that of that amount, $129,000 was contributed by

Smith or his company since September 2003.  Dkt. No. 448-2 at 5.  These contributions

constitute proceeds from the allegedly unlawful activities as discussed above.  However,

while technically commingled with the untainted funds already contributed to the account

before September 2003, they are reasonably severable given the nature of a 401-k

account.  Depending on the growth of the account since September 2003, any such

growth can be reasonably apportioned between contributions before September 2003 and

those after that date.  However, the SEC has offered no evidence as to those figures.  On

this record, therefore, the SEC has met its burden of demonstrating that $129,000 of the

$310,000 in the 401-k is tainted as the proceeds of unlawful activity but that the remaining

approximately $181,000 is not.  Accordingly, Smith's motion is granted to the extent of

$181,000 in the 401-k account but otherwise denied as to that account.

Smith also seeks a release of an Individual Retirement Account (IRA) currently

valued at approximately $41,000.  Smith Decl. at ¶ 7.  However, the SEC has produced

evidence that as of September 2003, the account held approximately $4,419.  Dkt. No.

448-2 at 7.  Since September 2003, contributions to the account totaling $18,000 have

been made from sources which are tainted by involvement in the allegedly unlawful

activities.  Id.  Thus, beyond these contributions, the fund has grown by approximately

$18,581.  Although not a precise methodology, this accrued interest may be approximately

but reasonably apportioned by allotting 20% ($3,716, the pre-September 2003

contributions constituting that percentage of the total contributions) to the original

contributions of $4,419 and 80% ($14,865, the post-September 2003 contributions

constituting that percentage of the total contributions) to the later contributions of $18,000.

Thus, Smith's motion will be granted as to $8,135 from his IRA and will otherwise be

denied as to funds from that account.

### 3. Reasonableness

As noted, both McGinn and Smith estimate that their legal costs will amount to at

least $300,000 each through the end of the criminal proceedings.  These costs are

principally a function of the hourly rate charged by their counsel multiplied by the number

of hours to be expended.  The hourly rate for purposes of this motion is governed by

standards of reasonableness, not simply the rate charged by the particular attorney,

although the rate charged by the attorney in question must be considered.  See Lore v.

City of Syracuse, 670 F.3d 127, 175-76 (2d Cir. 2012); Arbor Hill Concerned Citizens

Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d

182, 186 n. 3 (2d Cir. 2008).

McGinn's counsel states that he is charging an hourly rate of $500 for the lead

attorney and $250 for associates.  See Knox Reply Decl. (Dkt. No. 461-1) at ¶ 9.  Smith's

counsel states that he is charging an hourly rate of $350.  Dreyer Reply Decl. (Dkt. No.

456-2) at ¶ 4.  The highest hourly rate found reasonable in this district to date appears to

be $345.  See Aquent, LLC v. Atlantic Energy Servs., Inc., No. 1:09-CV-0524 (LEK/DRH),

2012 WL 1005082, at *3 (N.D.N.Y. Mar. 23, 2012) (Kahn, J.); see also Jimico Enterprises,

Inc. v. Lehigh Gas Corp., No. 1:07–CV–0578, 2011 WL 4594141, at *10 (N.D.N.Y. Sept.

30, 2011) (Suddaby, J.) (awarding attorneys' fees with hourly rates of $300.00 for partners

and $180.00 for an associate).  Given their exceptional abilities, experience, and

reputations the undersigned takes notice that lead counsel for both McGinn and Smith would no doubt be entitled to hourly rates at the maximum amounts found reasonable in this district.

Counsel for both McGinn and Smith estimate that the criminal case may not be tried for nine to twelve months.  This estimate is reasonable, although probably underestimated, given the complexities of the criminal charges, the lengthy period of time over which they stretch, and the number of individuals and entities involved in the subject matter of the case.  The government's investigation took at least two years to complete and involved the execution of at least eight search warrants.  Coming atop the SEC's related enforcement action here and a prior administrative proceeding involving related matters, the volume of materials to be amassed and reviewed by counsel for McGinn and Smith is massive and will require extraordinary time to complete.  Therefore, if this case proceeds through trial, the estimates of McGinn and Smith that their legal costs will expend total hours amounting to at least $300,000 each in fees and costs is entirely reasonable.

There remains uncertainty as to the number of hours that will actually be required, however.  The criminal case could end tomorrow with the dismissal of charges, plea bargained guilty pleas, or other eventualities short of a trial.  If so, a lesser amount of legal costs will be incurred.  So that reasonable but not excessive fees are paid, counsel for McGinn and Smith will be required to document their time and expenses before funds are released for payment of legal costs.  The procedure and standards for the award of attorney's fees and costs to a prevailing party under 42 U.S.C. § 1988 provides useful guidance for both the parties and the Court in this regard.  See also Dkt. No. 201 (application of Receiver for payment of attorney's fees and costs with supporting

14

documentation).  Because, if publicly filed, such applications could reasonably reveal defense strategies, investigative efforts, and other matters implicating the Fifth and Sixth Amendment rights of McGinn and Smith, such applications may be made to the chambers of the undersigned <u>ex parte</u> and <u>in camera</u> and will be filed by the undersigned in the docket of this case under seal.

Although payment to counsel for McGinn and Smith may not be made until authorized by the Court upon the application discussed above, Smith and McGinn may proceed to liquidate the assets released herein and to deposit the proceeds of that liquidation into the escrow accounts of their counsel.  Counsel shall maintain those liquidated funds in their respective escrow accounts pending approval of payments and any further order of the Court.

In summary, then, the motions of McGinn and Smith are granted and denied as follows:

A. McGinn's motion is granted to the extent that Item Nos. 1-8 and 10 are released from the preliminary injunction solely for the payment of legal costs according to the procedure summarized below in subparagraphs C, D, and E and is denied as to Item No. 9;

B. Smith's motion is granted as to $181,000 from his 401-k account and $8,135 from his IRA and is otherwise denied;

C. On or before **May 1, 2012**, McGinn and Smith shall file an accounting under oath  in the public docket of this case setting forth the total amounts obtained from the liquidation of each asset released from the preliminary injunction herein, all costs and deductions from that amount, the net amount delivered to their counsel for deposit in

counsels' respective escrow funds, and a certification that (1) none of the funds from these liquidated assets have been used for any purpose other than legal costs billed by their counsel, and (2) all proceeds from the liquidation of these assets, after deducting any applicable costs, have been paid to their counsel for deposit in counsels' respective escrow accounts;

D. Counsel for McGinn and Smith shall deposit funds received from their clients as the proceeds of the released assets in their respective escrow accounts pending further order of the Court;

E. After **May 1, 2012**, counsel for McGinn and Smith may apply to the undersigned, ex parte and in camera, for the payment of the attorney's fees and costs incurred to that date in accordance with the procedures for the award of such fees and costs under 42 U.S.C. § 1988, such applications will be filed in the docket of this case under seal although orders ruling on such applications will be filed in the public docket, and the Court will determine those applications under the standards applicable under § 1988;

F. Further applications may be made thereafter by counsel for McGinn and Smith as deemed appropriate by them; and

G. If a time is reached where funds obtained from the liquidation of the assets released herein are depleted for either McGinn or Smith, that defendant is granted leave to file another motion for the release of other assets for the payment of legal costs.

**B. The Trust's Motion**

In MDO I, the Court found that the SEC had failed to demonstrate a likelihood that it would succeed in proving that David Smith was a beneficial owner of the Trust.  MDO I at 41.  The Trust and the Great Sacandaga Lake camp ("camp") owned by David Smith's wife, Lynn Smith, were released from the asset freeze.  Id. at 42.  On August 3, 2010, the SEC obtained an order again freezing the Trust based on new evidence uncovered by the SEC that at the creation of the Trust in 2004, the Trust had contracted with David Smith and his wife to pay annual amounts of almost $500,000 to the Smiths from the Trust beginning in 2015.  Dkt. No. 104.  After briefing and a limited evidentiary hearing, the Court found in a decision filed November 22, 2010 that with the newly discovered evidence, the SEC had demonstrated a likelihood that it would succeed in proving that David Smith possessed a beneficial interest in the Trust and the Trust was restrained under the terms of the preliminary injunction.  MDO II at 23;[5] see also Dkt. No. 96.  The assets of the Trust have remained under the asset freeze of the preliminary injunction to date.  Its assets have a present estimated value of approximately $2.6 million in cash and investments plus the camp, valued at approximately $600,000.  Pl. Mem. of Law (Dkt. No. 447 at 11.  The Trustee of the Trust is now Geoffrey Smith, David Smith's son and one of the two beneficiaries of the Trust.  G. Smith Decl. (Dkt. No. 441-3) at ¶ 1.

The Trust now moves to release sufficient assets of the Trust to pay the following expenses and for an order authorizing its Trustee to expend the Trust's assets for certain

_____

[5]The Trust's motion for reconsideration of this decision was denied on January 11, 2011.  Dkt, No. 254 ("MDO III").  The Trust appealed, but the Second Circuit affirmed the decisions freezing the Trust's assets.  See Smith v. S.E.C., 432 Fed.Appx. 10 (2d Cir. Aug. 8, 2011).

purposes in the future:

> 1. Expenses related to the Trust totaling approximately $18,319.62;

> 2. Reimbursement to David Smith and his wife for expenses they paid on behalf of the Trust totaling approximately $16,996.27;

> 3. Taxes owed for 2011 in an amount yet unknown;

> 4. Attorney's fees and costs owed to the Trust's law firm of Featherstonhaugh, Wiley & Clyne, LLP ("Law Firm") totaling $117,462.93;

> 5. Future expenses as they are incurred; and

> 6. Authority for the Trustee to manage the Trust's investments.

Trust Mem. of Law (Dkt. No. 441-1) at 1-2.

### 1. Expenses and Taxes

Items 1 - 3, 5, and 6 all raise the threshold question of who is responsible for managing the Trust and paying its ongoing expenses.  The Trust contends that Geoffrey Smith, as Trustee, is responsible for its management.  In MDO II, the assets of the Trust were frozen under the terms of the preliminary injunction, which assigned responsibility for management of all such frozen assets to the Receiver.  MDO II at 23 ("The SEC's motion for a preliminary injunction as to the Trust . . . is **GRANTED** . . . ."); see also Preliminary Inj. (Dkt. No. 96) at § VIII - XIV (granting the Receiver the powers to take control over, manage, and pay the expenses of assets subject to the preliminary injunction).  Thus, while Geoffrey Smith remains the Trustee of the Trust as an entity, control and management over all assets of the Trust have been removed to the Receiver.  It is,

18

therefore, the Receiver, not the Trustee, who is responsible for, and has sole control over, the management of the Trust's assets, including the payment of all expenses, investment decisions, the preservation or sale of assets, and the like.

The Trust contends that it exists by virtue of state law and that N.Y. Est. Powers & Trust Law § 1-2.7 and related provisions oblige the Trustee to manage a trust's assets and pay its expenses.  Trust Mem. of Law at 5-6.  However, the Trust has cited no authority for its proposition that state law supersedes the federal law which authorized the preliminary injunction.  That injunction was upheld on the Trust's appeal and, therefore, it is now the law of the case that management of the Trust's assets for the duration of this action is committed to the Receiver.  See Novella v. Westchester County, 661 F.3d 128, 138 (2d Cir. 2011) ("[t]he law of the case doctrine requires a court to adhere to its own decision at an earlier stage of the litigation absent cogent or compelling reasons not to, . . .") (internal quotation marks omitted); see also Mem.-Decision & Order filed Feb. 1, 2011 (Dkt. No. 263) (authorizing the sale of the Smiths' Florida home by the Receiver and denying Lynn Smith's motion that she oversee the sale), aff'd, 653 F.3d 121 (2d Cir. 2011).  Pending the outcome of this action, the Trustee has no duty or authority to act in any way with respect to the Trust's assets.

This includes the camp.  As discussed in MDO I and II, the camp was titled to David Smith's wife, Lynn.  The camp was frozen by the TRO but then released from the TRO along with the assets of the Trust in MDO I on July 7, 2010.  In the weeks thereafter, the Trust purchased title to the camp from Lynn Smith for $600,000 and the sale was completed before the assets of the Trust were re-frozen on August 3, 2010.  See Dkt. No. 261-6 at 6; G. Smith Decl. at ¶¶ 6, 7.  Thus, as an asset of the Trust at the time the Trust's

assets were re-frozen on August 3, 2010, the camp became subject to the management of

the Receiver under the terms of the preliminary injunction.

The SEC thereafter moved for sanctions against, inter alia, Lynn Smith and that

motion was granted as to her in a decision filed July 20, 2011.  Dkt. No. 342 ("MDO IV").[6]

That decision stated in part as follows:

> As to the Great Sacandaga Lake property, it appears that the Trust has
> taken title to that property from Lynn Smith in the sale which occurred in July
> 2010. Therefore, if Lynn Smith fails to return to the Receiver by September
> 1, 2011 the full amount of the $600,000.00 sale price of the property plus
> closing costs, the Receiver may proceed in whatever manner he deems
> economically most feasible to maximize the return on this property. This may
> include the sale or rental of the property, or portions thereof, depending on
> the receiver's determination of market conditions. Lynn Smith and the Trust
> shall cooperate reasonably with the Receiver and any designee to facilitate
> the sale or rental of the property.

MDO IV at 41.  Lynn Smith did not redeem the camp.  Therefore, at least since September

1, 2011, the Receiver has possessed the sole authority to manage the camp under the

terms of the preliminary injunction, including the responsibility to pay necessary expenses

and the authority to rent or sell the camp as the Receiver deems in the best interests of

the investors.

As to reimbursement to David Smith and his wife for expenses previously paid for

the camp on behalf of the Trust, those expenses principally include property taxes,

maintenance charges, utility costs, and insurance.  First, it appears that the Smiths and

their family resided at and had use of the camp while it was frozen under the control of the

Receiver and paid no rent for its use.  The value of their use of the camp would be offset

---

[6]An appeal of that decision is currently pending in the Second Circuit.  Dkt. Nos.
351, 355-57

against the expenses they paid and would substantially, if not completely, negate those expenses.  Second, their voluntary payment of these expenses without the prior approval of the Receiver, who was then responsible for the camp's management, does not oblige reimbursement after-the-fact.  Third, these expenses were paid by the Smiths, not the Trust.  It is the Smiths, therefore, who may seek reimbursement for these expenses from the Receiver, who may or may not determine to reimburse such expenses, in whole or in part, if their payment is deemed to have been in the best interests of the investors.  Third, even if reimbursement were ordered, the payment for the reimbursement of those expenses would be subject to restraint under the terms of the preliminary injunction freezing the assets of David Smith and his wife and would, therefore, remain within the control of the Receiver, albeit in a different category.  Accordingly, the Trust's motion to release funds to reimburse David Smith and his wife for paying these expenses is denied.

For these reasons, then, the Trust's motion as to the present and future payment of expenses and taxes as set forth in Items 1-3, 5, and 6 of the Trust's motion is denied.


### 2. Attorney's Fees and Costs

In Item 4 of its motion, the Trust seeks the release of assets to compensate the Law Firm for $117,462.93 in attorney's fees and costs.  By way of background, the Law Firm also represents Lynn Smith and the Smiths' two children, Geoffrey and Lauren, as well as the Trust.  In July 2010 while the assets of the Trust were unfrozen, the Trust paid approximately $100,000 to its prior counsel.  Dkt. No. 261-6 at 6.  After the assets of the Trust were re-frozen on August 3, 2010, another law firm was retained by the Trust through the filing of MDO II in November 2010 and thereafter moved for release of Trust

assets to pay its fees and expenses totaling $83,628.05.  Dkt. Nos. 229, 255.  That motion

was denied on February 11, 2011.  Dkt. No. 277.  Neither the fees nor the costs for which

compensation is sought here are itemized nor is there any indication whether all or any

portion of those fees and costs have been apportioned among the other parties the Law

Firm represents in this action.[7]

        As a general rule, the standard governing the determination of this motion is

whether the Trust has demonstrated that release of the assets to pay attorney's fees and

costs would be "in the best interests of the defrauded investors."  S.E.C. v. Grossman, 887

F. Supp. 649, 661 (S.D.N.Y. 1995), aff'd, 101 F.3d 109 (2d Cir. 1996).  There is no doubt

that the Trust is authorized by its originating document to pay attorneys' fees and related

costs incurred on behalf of the Trust. Dkt. No. 277 at 5.  The holding in MDO II, however,

subjected the Trust's assets  to the asset freeze in the preliminary injunction. Thus, the

Trust's motion invokes not the authority of the Trust to pay legal fees and costs but the

discretion of the Court to permit such payments from frozen assets. The asset freeze

serves to protect the interests of investors in obtaining the return of funds if the SEC

proves in this action that defendants obtained the investments by fraud. MDO I at 14;

---

        [7]The Law Firm indicates only that it will submit its itemized records to the Court for ex parte, in camera review at the request of the court.  See Featherstonhaugh Decl. (Dkt. No. 441-2) at ¶ 8.  Any such submission would necessarily include the billing records for the Law Firm's other clients in this case to determine which fees are attributable to the Trust and which to the other clients.  Moreover, the submissions are protected from disclosure only to the extent that they reveal communications between the Law Firm and its clients.  See  DiBella v. Hopkins, 403 F.3d 102, 120 (2d Cir. 2005) ("In New York, attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered."); Gary-Friedrich Enterprises, LLC v. Marvel Enterprises, Inc., No. 08 Civ. 1533(BSJ)(JCF), 2011 WL 2623458, at *3 (N.D.N.Y. June 21, 2011).  Thus, any such records would be filed in the docket of this case after the redaction of privileged communications.

S.E.C. v. Infinity Group Co., 212 F.3d 180, 197 (3d Cir. 2000) ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets.") (citations omitted). On this motion, therefore, the issue presented is not simply whether the Trust may incur and pay such legal fees and costs – it may – but whether a balancing of the interests of investors in preserving assets for possible later restitution is outweighed by the interests of the Trust in paying the Law Firm's fees and costs. See S.E.C. v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1106 (2d Cir. 1972).

The balance of interests required here differs in an important respect from that required above on the similar motions of McGinn and Smith.  The standard for unfreezing assets to pay legal fees incurred while defending a civil action is different than that utilized for a criminal action.  S.E.C. v. FTC Capital Markets, Inc., No. 09-CV-4755 (PGG), 2010 WL 2652405, at *3 n.1 (S.D.N.Y. June 30, 2010) (citing S.E.C. v. Stein, No. 07-CV-3125 (GEL), 2009 WL 1181061 (S.D.N.Y. Apr. 30, 2009) (holding that the "touchstone of the inquiry [whether or not to unfreeze assets to subsidize attorneys fees in a civil case] is equity."); S.E.C. v. Coates, No. 94-CV-5361 (KMW), 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994) ("Although a court may impose an asset freeze in a civil case, notwithstanding a companion criminal case, these circumstances dictate that the court pay particular attention to the defendant's Fifth and Sixth Amendment rights."); see also Commodity Futures Trading Comm'n v. Walsh, Nos. 09-CV-1749 (GBD), 09-CV-1750 (GBD), 09-CR-722 (MGC), 2010 WL 882875, at *2 (S.D.N.Y. Mar. 9, 2010) (explaining that special consideration arises in actions identical to the present which involve "asset freeze orders in civil actions, with Defendants also being tried in a parallel criminal proceeding," due to the "unique circumstances requir[ing] the court to pay particular

23

attention to the Defendants' Fifth and Sixth Amendment rights.").

Thus, in the cases of McGinn and Smith, their interests carry greater weight in the balance of interests than do those of the Trust here.  McGinn and Smith seek the release of assets to pay attorney's fees and costs in connection with their criminal case, not this civil action.  Unlike this action, the criminal action implicates the Fifth and Sixth Amendment rights of McGinn and Smith to a fair trial and the effective assistance of counsel.  The Trust in this civil action does not enjoy the protections afforded criminal defendants and, therefore, the weight accorded its interest in the balancing of interests is correspondingly less.

For at least four reasons, the balance of interests here weighs decidedly in favor of denying the Trust's motion for payment of its attorney's fees and costs.  First, the total amount of investor funds obtained through defendants' alleged fraud far exceeds the value of assets frozen by the SEC for the benefit of those investors in the event the SEC prevails in this action.  Compare Am. Compl. at ¶¶ 1, 6 (alleging losses to over 900 investors of approximately $84 million) with, e.g., MDO I at 6-12 (less than $10 million likely will be available to repay defrauded investors).  There is no likelihood, then, that a surplus will exist from the frozen assets in the event the SEC prevails in this action. The investors, on whose behalf the assets were frozen, thus possess a heightened interest in having those assets maintained without further diminution pending the outcome of this action. This interest far outweighs that of the Trust in paying the charged fees and costs before this action is fully resolved.

Second, the Trust was subjected to the asset freeze after a determination that David Smith possessed a beneficial interest in the Trust. MDO II at 20-23. In these

24

circumstances, the Trust must be viewed as an asset of David Smith. So viewed, the asset

freeze over the Trust should not be lifted absent a showing that David Smith is unable to

satisfy obligations related to those assets from other, unfrozen sources.  Smith has

submitted a sworn statement of his assets in connection with his own motion here.  Dkt.

No. 440-2.  That submission lists assets of significant value, but (1) virtually all are now

frozen under the preliminary injunction, and (2) those portions which are available are

ordered herein released to pay his criminal defense attorney.  Ordinarily, these facts might

weigh in favor of the Trust.  However, the SEC has proffered evidence, unrefuted by the

Trust or Smith, that in 2011, the Smiths received $14,000 for the rental of their Saratoga

Springs residence for the racing season and that in the summer of 2011, the Smiths paid

$3,338.40 for an engagement party.  Stoelting Decl. at ¶¶ 2, 3. This evidence indicates

both that David Smith has other income and assets not presently subject to the asset

freeze from which attorneys' fees and costs can be paid and that he continues to incur

non-essential expenses the payment of which could have been made for attorney's fees

and costs.  Therefore, the declared need for release of the funds is diminished by the

access to other funds and the expenditure of available funds on non-essential costs rather

than legal costs.

Third, for a variety of reasons, the amount of attorney's fees and costs incurred by

the Trust would be substantially reduced before any assets are released to the point

where they could likely be paid from Smith's available remaining assets.  For example,  a

substantial portion of the fees and costs are directly related to the Trust's own misconduct,

and that of those acting on behalf of the "Trust, in concealing the existence of the Annuity

Agreement.  See MDO I-IV.  Moreover, assets would be released only to compensate for

25

those fees and expenses incurred on behalf of the Trust, not those incurred on behalf of the Law Firm's other clients in this action.  If fees and costs were incurred jointly on behalf of one or more other of those clients, the amount of assets released would be reduced by those costs incurred on behalf of clients other than the Trust.  See, e.g., Dkt. Nos. 247-1 at ¶ 4, 146-2 at ¶ 5 (showing that the Law Firm has already received approximately $115,000 for its representation of Lynn Smith).

Furthermore, assets would be released from the freeze only to pay reasonable fees and costs, not simply all fees and costs incurred.  See Bliven v. Hunt, 579 F.3d 204, 212-13 (2d Cir. 2009); Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 580-81 (2d Cir. 2003).  Generally, such fees and costs incurred are reduced by amounts charged for litigation efforts which were unsuccessful.  See Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 151-52 (2d Cir. 2008).  Here, the Trust was unsuccessful on the SEC's motion for reconsideration, its own motion for reconsideration of MDO II, and its appeal of those decisions.  See MDO II; MDO III; Smith v. S.E.C., 432 Fed.Appx. 10.  Finally, as discussed above, the hourly rates charged by counsel are subject to the determination by the standard in this circuit and not simply the amount an attorney charges.  All of these factors combine to demonstrate that the actual amount of attorney's fees and expenses which could be allowed for the release of assets is substantially less than that claimed here by the Trust's counsel and would appear to be within the ability of Smith to pay without the release of any assets.  Thus, the Trust has failed to demonstrate that the reasonable amount of its fees and costs cannot be paid from presently available funds.  See S.E.C. v. Sekhri, No. 98 Civ. 2320(RPP), 2000 WL 1036295, at *2  (S.D.N.Y. July 26, 2000),

26

Fourth, payment of the Trust's legal fees and expenses at the conclusion of this action remains possible if the Trust prevails.[8]  If the Trust prevails, its assets will be released from restraint and the value of those assets clearly suffices to pay the accrued attorney's fees and costs.

Balancing these factors, the SEC, on behalf of investors, possesses a strong interest in maintaining the assets of the Trust currently under the preliminary injunction without diminution given the large amount which may potentially be owed by Smith.  On the other hand, Smith has assets outside those frozen by the preliminary injunction which could be used to pay fees, he has paid non-essential expenses which could have been used to defray the accrued attorney's fees and costs, the total amount charged by the Law Firm is well beyond what would be allowed, and it therefore appears that the reasonable fees and costs of the Law Firm can be paid from available funds.  Thus, the interests of defrauded investors in preserving the frozen assets substantially outweighs the interests of the Trust in releasing assets to pay attorney's fees and costs.  For these reasons, the Trust's motion as to such fees and costs is denied.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

> 1. McGinn's motion for the release of assets from the preliminary injunction

---

[8]The Trust joined in the motion of the United States to stay this action pending completion of the criminal action against McGinn and Smith (Dkt. No. 474).  See Record of Proceedings on Mar. 15, 2012.

27

to pay attorney's fees and costs in the parallel criminal action (Dkt. No. 439) is **GRANTED** in part and **DENIED** in part as indicated above;

      2. Smith's motion for the release of assets from the preliminary injunction to pay attorney's fees and costs in the parallel criminal action (Dkt. No. 440) is **GRANTED** in part and **DENIED** in part as indicated above; and

      3. The Trust's motion for the release of assets from the preliminary injunction to pay past and future expenses, to reimburse David Smith and his wife for Trust expenses they paid, and for the payment of attorney's fees and costs in this action (Dkt. No. 441) is **DENIED** in all respects.


**IT IS SO ORDERED.**

DATED:  April 4, 2012

_____
David R. Homer
U.S. Magistrate Judge