**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.              No. 10-CV-457
               (GLS/CFH)
McGINN, SMITH & CO., INC., et al.,

       Defendants.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| PHILLIPS LYTLE, LLP<br>Attorneys for Receiver<br>Omni Plaza<br>30 South Pearl Street<br>Albany, New York 12207 | WILLIAM J. BROWN, ESQ. |
| UNITED STATES SECURITIES &<br>  EXCHANGE COMMISSION<br>Attorney for Plaintiff<br>Room 400<br>3 World Financial Center<br>New York, New York 10281 | KEVIN McGRATH, ESQ. |
| LINNAN & FALLON, LLP<br>Attorney for Defendant Trust<br>61 Columbia Street<br>Suite 300<br>Albany, New York 12210 | JAMES D. LINNAN, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

# MEMORANDUM-DECISION AND ORDER

 Presently pending before the Court is the Receiver's report regarding the recommended

disposition of the David L. and Lynn A. Smith Irrevocable Trust U/A/ 8/04/04 ("the Trust")

property located on Sacandaga Lake[1]. Dkt. No. 604. The Trust objects to the Receiver's conclusion to sell the property. Dkt. No. 626. The plaintiff, Securities and Exchange Commission ("SEC"), joins in the Receiver's recommendation. Dkt. No. 624. For the reasons articulated below, the Court also agrees with the Receiver's proposition to sell the property and directs the Receiver to move forward with the sale accordingly.

## I. Background

For a more complete description of the background of this action, see S.E.C. v. McGinn, Smith & Co., 2011 WL 1770472 (N.D.N.Y. May 9, 2011) (district court's decision denying motions to dismiss of certain defendants); S.E.C. v. Wojeski, 752 F. Supp. 2d 220 (N.D.N.Y. 2010) (reconsidering prior asset freeze order and subsequently modifying said order to include the Trust) aff'd 422 Fed. App'x 10 (2d Cir. 2011); S.E.C. v. Smith, 710 F.3d 87, 98 (2d Cir. 2013) (remanding, while not disturbing the district court's previous ruling providing for the sale of the Sacandaga property, back to the district court for further direction to the Receiver); S.E.C. v. McGinn, Smith & Co., No. 10-CV-457, Memorandum-Decision and Order (Sept. 11, 2013) ("MDO I") (Dkt. No. 592) (denying the Trust's motion to vacate the sale of the Sacandaga property).

As relevant to the present motion, the undersigned directed that:

> Consistent with the holding from Smith V, the Court recognizes that "certain findings" should be determined including (1) the market value of the property; (2) expectations that the market for the property will improve in the foreseeable future; (3) whether the property is being maintained and whether additional debts are

---

[1] "The Property consists of three parcels of real property aggregating approximately 1.41 acres. Two of the parcels are improved by three seasonal residences (one main house and two cottages)." Dkt. No. 604 at 3-4. The main house has beach and lake access, while both cottages do not. Id. at 4.

-2-

> being incurred; (4) whether the equity in the property will be
> preserved; and (5) whether the value of the property will appreciate
> significantly to compensate for the expenses being incurred. 653
> F.3d at 128-29. Given that information was not previously
> submitted to the Court to make such determinations, the Receiver
> is directed to evaluate these five topics, as well as any other areas
> of consideration he deems relevant given his expertise[2], and
> determine whether selling or renting the property, or a combination
> of both, will maximize its value. The Receiver should present his
> conclusions to the Court via a written report. The parties will then
> be afforded an opportunity to file written objections to the
> Receiver's report. The Court will then consider all submissions and
> make a finding consistent with maximizing the property's value,
> directing the Receiver to proceed with that plan.

MDO I at 10. Pursuant to the Court's direction, on October 10, 2013 the Receiver filed his report. Dkt. No. 604. After (1) performing due diligence and reviewing public information and documentation regarding the Trust and its beneficiaries' interests; (2) site visits; (3) communication and consultation with a real estate broker, an appraiser, the Trust's trustee and David and Lynn Smith; and (4) relying on his experience in real estate and with that property in particular, "the Receiver conclude[d] that a sale of the Property is the best course of action . . . ." Id. at 3, 5. In making that conclusion, the Receiver provided the undersigned with appraisals, real estate comparisons, and budgets for the property, both accounting for its rental and its non-rental. Id. at 6-8; Id., Exs. C, D.[3]

Going through the five topics requested by the Court in MDO I, the Receiver concluded that (1) the market value of the property is not properly reflected by the conveyance between the Trust and Lynn Smith because it "was not an arms-length transaction;" (2) the

---

[2] The Receiver has already outlined his expertise in real estate sales in conjunction with Smith III. 2011 WL 9528138, at *4 (citing Brown Decl. (Dkt. No. 222-3) ¶ 3).

[3] Given the confidential nature of the material discussed and disclosed in conjunction with formulating his opinion and creating a status report for the Court, such information, specifically the values associated with the appraisal, budgets, expenses, and income figures, are filed under seal. Dkt. No. 603.

-3-

market prices on Sacandaga Lake are stable, thus "the Receiver agrees that the likelihood of a successful sale has increased for a Sacandaga Lake property which is properly priced;" (3) the property is beginning to show signs of wear which will increase the cost of maintaining the property, on top of the fixed annual expenses such as property taxes and utilities; (4) "under no circumstances will the current equity in the Property (including [the] . . . Trust cash) be preserved even if the value of the Property does not depreciate;" and (5) "[t]he value of the Property is not likely to appreciate in any material amount to compensate for the rental or non-rental expenses to be incurred." Dkt. No. 604 at 8-11. The Receiver explained that rental of the property was not indicated because of (1) the inability or difficulty to retain a responsible rental agent; (2) the lack of a historical ability to rent the property[4]; (3) the risk of increased damage to the structures, as well as additional wear and tear to the properties, and concomitant rise in insurance premiums; and (4) complications with Lynn Smith's claimed ownership of the furnishings, art, and equipment in the properties. Id. at 7-8, 11-12. Ultimately, the Receiver concluded that "[t]here is no economic justification to continue current ownership of the Property [adding that such] . . . would also be contrary to the Receiver's duties to maximize recoveries for the defrauded investors." Id. at 11.

The Trust objects to the Receiver's recommendation, stating that the recommendations

---

[4] There is a factual inconsistency with regard to the ability to rent the property. In defendant/intervenor Geoffrey R. Smith's affidavit (Dkt. No. 626-1) it indicates that the Smith family "was able to secure[] tenants for the full rental seasons during the period from 1983 to 1998," and that he had "already received [four] requests from friends eager to rent the property for this coming season . . . [including a] request . . . from a family of [twelve] that has contacted [him] to inquire into renting all [three] dwellings over Memorial Day weekend." G. Smith Aff. ¶¶ 13, 14. However, the Receiver indicated that Lynn "Smith told [him] in response to a direct question that the property had not been rented." Dkt. No. 632 at 2. The undersigned finds the statements of the Receiver more credible in this instance.

are disingenuous as they are not in the best interest of the Trust and the appraisal of the property and proposed sale price are too low, citing instead the previous sale price paid by the Trust as the correct listing price with which to move forward. Dkt. No. 626.

The SEC responded, supporting the Receiver's recommendation and deeming the situation comparable to the prior sale of the Vero Beach house in Florida. Dkt. No. 624. The Receiver also filed a reply in response to the Trust's objections. Dkt. No. 632. This letter explained why the valuation of the Sacandaga Property was correct, specifically explaining the appropriateness of the sale price of a neighboring property which the Trust contends was priced too low and should not have been considered by the Receiver. Id. at 1. Additionally, the Receiver allayed concerns about listing the property in the fall and winter, stating that "[s]ophisticated buyers want to view lake property when the lake level is low so that they can determined whether the property elevation leading to the beach and . . . lake is level and whether the lake is sandy or stony." Id. at 1-2. Lastly, the Receiver discussed the Property's rental history, as well as amending the purported costs associated with caring for the Property throughout the winter. Id. at 2.

## II. Analysis

To the extent that the Trust is proffering arguments which ultimately relate to the appropriateness of the Court's prior Decision and Order sanctioning Lynn Smith and requiring the sale of the Sacandaga Lake Property, such arguments will not be further contemplated as they have been articulated, analyzed at length in the prior opinions of the Court, and ultimately upheld. Further, to the extent that the Trust is contending that it has a special priority over the investors by way of either the beneficiaries' personal ties to the property or their status as victims of a different sort than the investors, these arguments

also fail. As has been previously discussed by the Court,

> it is the Trust, not the Smith children, which owns the property. Having opted for the benefits of ownership by the Trust rather than themselves, the children cannot now assert a harm to any cognizable ownership or property interest. Moreover, the Trust's financial interest in the property, its only cognizable interest here, is identical to that of the [R]eceiver – to avoid dissipation of the value of the property and to realize the maximum return on that value.

S.E.C. v. Smith et al., No. 10-CV-457, Memorandum-Decision and Order (N.D.N.Y. Oct. 6, 2011).

The present and sole focus of this opinion centers around the Second Circuit's mandate specifically directing the Court to provide more direction to the Receiver regarding the disposition of the Sacandaga Lake Property. In order to comply with that mandate, the undersigned asked the Receiver to provide the Court with an informed opinion recommending a course of action regarding the property while taking into consideration various enumerated factors. MDO I, at 10. The Receiver has provided the undersigned with such.

The Receiver reported that without renting the property, the actual annual expenses are approximately $20,000. Dkt. No. 604 at 6. Moreover, capital repairs were conducted in 2013 which added approximately $6,500 in additional expenses for the property and the Receiver expects to pay another $3,000 for capital improvements in 2014. Id. at 7. Even with renting, the Receiver still projects a negative cash flow of over $9,000. Id. Similar to the Vero Beach house, the undersigned agrees with the Receiver that the property is liable to deterioration and that its continued possession fails to represent a financially responsible solution given the actual and projected figures provided by the Receiver. Smith v. S.E.C., 653 F.3d 121, 129 (2d Cir. 2011) (upholding liquidation of the Vero Beach home "in light of its declining value and the diminishing equity in the property.") (citations omitted).

Moreover, the rental of the property will not provide for adequate income to both pay for the fixed annual expenses of the property and ensure the continued financial health of the property as an investment piece. Accordingly, as the Second Circuit previously held with respect to the Vero Beach property, pursuant to "the district court's broad equitable power to fashion ancillary relief when its jurisdiction under those laws has been involved," in combination with the projected loss in capital associated with the property as either an investment piece or rental property, a direction to sell the Sacandaga Lake Property is appropriate. Id. at 128-29.

### III. Conclusion

For the reasons stated above, it is hereby **ORDERED** that the Receiver may proceed with the sale of the Sacandaga Lake Property pursuant to the report filed with the Court (Dkt. No. 604).

**SO ORDERED**.

Dated: November 22, 2013
      Albany, NY

Christian F. Hummel
U.S. Magistrate Judge