UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

      v.                                  No. 10-CV-457
                                           (GLS/CFH)

McGINN, SMITH & CO., INC., et al.,

                    Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

UNITED STATES SECURITIES &          KEVIN McGRATH, ESQ.
    EXCHANGE COMMISSION             DAVID STOELTING, ESQ.
Attorney for Plaintiff
Room 400
3 World Financial Center
New York, New York 10281

LINNAN & FALLON, LLP                      JAMES D. LINNAN, ESQ.
Attorney for Defendant Trust, Geoffrey
    Smith & Lauren T. Smith
61 Columbia Street
Suite 300
Albany, New York 12210

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Presently pending before the Court is a motion from counsel for the David L. and Lynn A. Smith Irrevocable Trust U/A 8/04/04 ("the Trust") and the Trust beneficiaries, Geoffrey and Lauren Smith, to amend the Trust to delete the provisions authorizing the Trust to enter into the private annuity agreement with David and Lynn Smith. Dkt. No. 660. Plaintiff Securities and Exchange Commission ("SEC") opposes the motion. Dkt. No. 673. For the reasons which follow, the motion is denied.

## I. Background

### A. Prior Court Orders

For a more complete description of the background of this action, specifically the creation of the Trust, discovery and impact of the annuity agreement, and dispute over who has a beneficial interest in the Trust, see S.E.C. v. McGinn, Smith & Co., 752 F. Supp. 2d 194 (N.D.N.Y. 2010) (finding that the Trust was not jointly owned or otherwise an asset of David Smith and denying to include the Trust in the asset freeze); S.E.C. v. Wojeski, 752 F. Supp. 2d 220 (N.D.N.Y. 2010) (reconsidering prior asset freeze order and subsequently modifying said order to include the Trust) aff'd 432 Fed. App'x 10 (2d Cir. 2011); S.E.C. v Smith, 798 F. Supp. 2d. 412 (N.D.N.Y. 2011) (issuing sanctions against Lynn Smith, the Trust's attorney and trustee and disgorging funds from Lynn Smith for their conduct in connection with concealing the existence of the annuity agreement) aff'd in part 710 F.3d 87 (2d Cir. 2013) (upholding sanctions and disgorgement order against Lynn Smith for her bad faith in not revealing her interest in the Trust).

### B. Amendment of the Trust Documents

As is relevant to the current motion, with the shift in current tax laws, gift taxes will no longer be imposed upon the corpus of the Trust; therefore, the Trust wishes to amend its creation documents to terminate the annuity agreement as its stated purpose by its counsel, creators, and beneficiaries, to shield the Trust from gift taxes, is no longer present. Linnan Decl. (Dkt. No. 660-1) ¶¶ 9-11. Accordingly, pursuant to New York State Estates, Powers and Trusts Laws ("N.Y.E.P.T.L.") § 7-1.9, the Trust asserts its "absolute right to amend the provisions of the Trust . . . regardless of the purpose or motive for the amendment." Id. ¶¶

12-13. The creators of the Trust, David and Lynn Smith, have submitted affidavits "agree[ing] to amend the original Trust and . . . renounc[ing] any and all rights [they] may have now or in the future to any benefits from the Trust by way of the Declaration of Trust and the Private Annuity Contract executed pursuant to the terms of the Declaration of Trust." Lynn Smith Aff. (Dkt. No. 660-3) ¶ 1; David Smith Aff. (Dkt. No. 660-4) ¶ 1; see also Second Lynn Smith Aff. (Dkt. No. 662) ¶¶ 2-3, 10-12 (restating the purpose of the requested amendment given the change in the tax laws, as well as the desire of both Lynn and David Smith to amend Trust documents to void the annuity contract and any future interest to which it entitled them); Dkt. No. 662-4 (explaining changes to estate and gift tax laws). The beneficiaries of the Trust and current trustee, Geoffrey and Lauren Smith, also submitted affidavits echoing their parents' sentiments that, given the change in the IRS laws, the amendment of the Trust would be in the best interest for all involved and consenting to its modification, specifically the termination of the annuity contract. See Geoffrey Smith Aff. (Dkt. No. 660-5), Lauren Smith Aff. (Dkt .No. 660-6).

    The SEC opposes the current motion arguing that the (1) trustee lacks the authority to modify the Trust under the asset freeze order; (2) motion to modify the asset freeze is not in the best interests of the investors; and (3) N.Y.E.P.T.L. does not supercede the present injunction and is irrelevant to the present motion. Pl. Memorandum of Law (Dkt. No. 673). The Trust contends that (1) it is the creators and beneficiaries of the Trust who must reach an agreement to the modification, not the trustee; (2) public policy behind the N.Y.E.P.T.L. was "to enhance, not restrict the modifiability of trusts . . . supplementing the courts' broad-based equitable authority to permit deviation to effectuate a trust's purpose;" and (3) the best interests of the investors is irrelevant as the operable question deals "with a very narrow and unique issue of the Creator's rights under New York State [law] . . . to amend a

-3-

'Trust Document' and whether or not that right can be abridged by the mere pendency of a potential claim." Trust Reply (Dkt. No. 678).

## II. Discussion

New York State law provides, in pertinent part, that "[u]pon the written consent . . . of all the persons beneficially interested in a trust . . . the creater of such trust may revoke or amend the whole or any part thereof by a[ written] instrument . . . ." N.Y.E.P.T.L. § 7-1.9(a). Accordingly, pursuant to state law, all that is needed is the consent of all beneficiaries and the grantor of the trust may amend or revoke it. Further, counsel for the Trust advocates that David and Lynn Smith can renounce their interests in the Trust, namely the money which they would have received pursuant to the annuity agreement, according to N.Y.E.P.T.L. § 2-1.11(c) as the "statute creates a legal fiction that allows distributees to avoid attachment by creditors or the payment of taxes." Trust Memorandum of Law (Dkt. No. 668-1 at 8-9) (quoting United States v. Comparato, 22 F.3d 455, 457 (2d Cir. 1994) (citations omitted)).

However, the Trust is presently part of a preliminary injunction which froze certain assets, including the corpus of the Trust, and appointed a Receiver to oversee such frozen assets. The terms of that injunction prohibit, inter alia the Trust or Smiths making "any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property . . . ." Dkt. No. 4 at p. 7 § II. While the Trust contends that the injunction and asset freeze are "merely . . . provisional remed[ies]," (Trust Reply at 5), the importance of these remedies have already been determined by the Court. Further, the Trust has again failed to cite any authority for the proposition that state law supercedes the federal law which authorized the pending injunction.

-4-

The Trust's arguments seem to over simplify the applicability of § 7-1.9, or at least fail to recognize the equitable powers and duties of the court. As noted by a bankruptcy case from this district:

> Even assuming the trusts are valid and irrevokable and have been properly amended under NYEPTL § 7-1.9 . . . the Court is troubled by the situation presented herein, where an individual is able to shield $700,000.00 in trust originally for the benefit of his wife and children and then file for bankruptcy and obtain discharge of all his debts without apparently generating any creditor dividends . . . [A]n injunction . . . is essential in order for the Court to preserve its ability to make the necessary inquiry with regard to property of the estate so that it can administer the liquidation of the bankruptcy estate and safeguard the equality of any possible distribution to creditors . . . Any other result would impair and perhaps defeat the Court's jurisdiction . . . , notwithstanding threatening the integrity of the Code.

In re Steffan, 97 B.R. 741, 748 (Bankr. N.D.N.Y. 1989). While the Court recognizes that this is not a bankruptcy matter and that the questions of law and jurisdiction are completely different, the underlying sentiment that the bankruptcy court expresses, namely that §7-1.9 should not be used as a vehicle to circumvent bankruptcy and debt reasonably owed to bonafide creditors, resonates with the logic behind the present order. This provision of state law, which as noted before has not been demonstrated to trump the federally instituted injunction order, should not be able to shield David or Lynn Smith from any potential liabilities owed to the alleged victims arising from claims in the present case. To do so would threaten the integrity of this Court, as well as the purpose and power of the injunction order and asset freeze entered almost four years ago.

Further, while the Trust relies on the commentary behind N.Y.E.P.T.L. § 7-1.9 to argue that public policy strongly favors the Trust creators' right to amend the Trust, it is interesting to note that the quoted commentary language directs the court to use its equitable powers "to effectuate a trust's purpose." Trust Reply at 6. However, the purpose of the Trust in the

-5-

present action, and whether or not it provided David Smith with an ownership interest, has been one of the most contested issues in the litigation thus far. Accordingly, prior to any modifications being made, it seems imperative for the Court, in fairness to the parties and investors, to discern what the Trust's purpose was, as that will inform whether the corpus of the Trust should remain with the Smith children or be available for the judgments which David Smith has or may have imposed upon him.

As previously discussed by this Court, "[t]he preliminary injunction freezing the defendants' assets was entered to insure the availability of those assets to compensate the alleged victims of defendants' conduct in the event the SEC prevails in this action." S.E.C. v. McGinn, No. 10-CV-457 (GLS/DRH), 2012 WL 1142516, at *2 (N.D.N.Y. Apr. 4, 2012); see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1041 (2d Cir. 1990) (explaining that an asset freeze is "ancillary relief to facilitate enforcement of any disgorgement remedy that might be ordered in the event a violation is established at trial."); S.E.C. v. Infinity Group Co., 212 F.3d 180, 197 (3d Cir. 2000) ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets."). The freeze order is intended to preserve the status quo of all assets unless and until litigation directs otherwise. The defendants are asking the Court to upset the status quo by changing the underlying Trust documents. While this is a different consideration than the prior requests for carve-outs for various living expenses and fees, the undersigned is hard pressed not to apply the same standard for modifying the asset freeze to upset the status quo. Thus the question is again presented to the Court, despite the stated purpose of the asset freeze and language of the injunction order, whether defendants have demonstrated that modification of the Trust agreement to allow David and Lynn Smith to rescind any future interest in the Trust would be "in the best interests of the defrauded investors." S.E.C. v. Grossman, 887 F.

-6-

Supp. 469, 661 (S.D.N.Y. 1995) aff'd 101 F.3d 109 (2d Cir. 1996).

District courts have a well established "authority to freeze personal assets temporarily and the corollary authority to release frozen personal assets, or lower the amount frozen." S.E.C. v. Duclaud Gonzalez de Castilla, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001) (citations omitted). In considering whether to modify an asset freeze, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." S.E.C. v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1106 (2d Cir. 1972).

Preservation of the status quo is imperative for many of the same reasons as have already been discussed in previous Court orders. The total amount of investor funds obtained through defendants' alleged fraud far exceeds the value of assets frozen by the SEC for the benefit of those investors in the event the SEC prevails in this action. Compare Am. Compl. ¶¶ 1, 6 (alleging losses to over 900 investors of approximately $84 million) with e.g., Dkt. No. 580 ¶¶ 8-9 (explaining total claims asserted against the McGinn Smith Estate of approximately $125 million with objections of approximately $24 million leaving an excess of $100 million in investor claims with a cash on hand value of $14 million, with just under $3.4 million coming from frozen assets of the relief defendants). There still remains no likelihood that a surplus will exist from the frozen assets in the event the SEC prevails in this action. The investors, on whose behalf the assets were frozen, thus possess a heightened interest in having those assets maintained without further diminution pending the outcome of the action.

Balancing against that, is the stated purpose for the modification of the Trust, namely allowing the Smiths to carry out their intended purpose of leaving their children a gift tax-free legacy. The timing and content of this motion is curious given the fact that an identical

-7-

action could be completed, without the requirement of Court intervention, after the questions regarding the ownership interests surrounding the Trust are determined assuming the Trust and Lynn Smith are successful.[1] There is still a year and a half before the annuity agreement begins, plenty of time for this case to progress and allow for the resolution of these important issues which remain at the heart of this contentious litigation. Waiting to modify the Trust documents until that time seems to make the most sense, as there is no prejudice to any of the Smiths to wait.

However, if the Trust assets are determined to be an asset of David Smith, thus subject to the criminal judgment presently levied, See United States v. McGinn & Smith, No. 12-CR-28 (DNH), Dkt. Nos. 104, 232 (judgement from the criminal case sentencing David Smith to 120 months imprisonment and issuing a restitution order of $5,989,736 of which $5,748,722.00 is to be paid to the 841 victims and $241,014 is to be paid to the IRS), and potentially any future civil judgments, any renunciation of interests at this point would be rendered moot. While not directly on point, it appears that United States v. Comparato , 22 F.3d 455 (2d Cir. 1994) is somewhat instructive when discussing policy implications regarding renunciation, ownership, and liens. Pursuant to the Second Circuit's holding rejecting the "contention that the . . . provision[s] of §2-1.11 [of the N.Y.E.P.T.L.] may defeat

---

[1] The Court is also perplexed by the timing of this request given Lynn Smith's most recent motion seeking another modification to the asset freeze to carve-out money for her living expenses which, she contends, far exceed her modest means. See, Dkt. No. 610. One would think that the money promised by the annuity agreement, especially in the face of her husband's criminal conviction and sentence which have left her without a large portion of her monthly income, as well as her own stated inability to earn more than what she is presently receiving, is of utmost importance for her continued financial solvency given the dire situation she recently proffered in her last motion to the Court. Id. The undersigned will not comment on the veracity of David and Lynn Smiths' stated intentions in the present motion, but would be remiss in failing to acknowledge the apparent inconsistency created by the proffers in the present motion as compared to that which was last filed.

federal tax liens that attached prior to the attempted renunciations," it stands to reason that any renunciations in the face of an injunction order charging parties to maintain the status quo or a criminal judgment would also be rejected. Id at 458. Accordingly, modification of the Trust documents seems most appropriate at a later date if, as discussed supra, the Trust is deemed not to have been an asset of David Smith.

Balancing these factors, the SEC, on behalf of investors, possesses a strong interest in maintaining the assets and status quo of the Trust, presently frozen, without diminution given the large sum of money which may potentially be owed by Smith. On the other hand, in the event David Smith is not deemed to have a propriety interest in the Trust, modification can then occur to terminate the annuity agreement and effectuate the presently stated purpose of the Trust, a legacy from David and Lynn Smith to their children. Therefore, the interests of the defrauded investors in preserving the frozen assets substantially outweighs the interests of David and Lynn Smith to modify the Trust documents.

### III. Conclusion

For the reasons stated above, it is hereby **ORDERED** that the Trust's motion to amend its documentation to delete the provisions authorizing the Trust to enter into the private annuity agreement with David and Lynn Smith (Dkt. No. 660) is **DENIED**.

**SO ORDERED**.

Dated: February 21, 2014
Albany, NY

Christian F. Hummel
U.S. Magistrate Judge