**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

SECURITIES AND EXCHANGE
COMMISSION,

                                      **1:10-cv-457**
            **Plaintiff,**                      **(GLS/CFH)**

            v.

**MCGINN, SMITH & CO., INC.
et al.**,

                       **Defendants**

**JAT CONSTRUCTION CO., INC.
DEFINED BENEFIT PENSION
PLAN et al.**,

                       **Investors,**
and

**U.S. ATTORNEY'S OFFICE FOR
ND/NY**,

                     **Intervenor.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| U.S Securities and Exchange Commission | DAVID P. STOELTING, ESQ. |
| | HAIMAVATHI V. MARLIER, ESQ. |
| 3 World Financial Center | JACK KAUFMAN, ESQ. |
| New York, NY 10281 | JOSHUA M. NEWVILLE, ESQ. |
| | KEVIN P. MCGRATH, ESQ. |
| | LARA S. MEHRABAN, ESQ. |

**FOR THE DEFENDANTS, INVESTORS,**

**AND INTERVENORS:**
*McGinn, Smith & Co.*; *Inc.*, *McGinn, Smith Advisors, LLC*; *McGinn, Smith Capital Holdings Corp.*; *First Advisory Income Notes, LLC*; *First Excelsior Income Notes, LLC*; *First Independent Income Notes, LLC*; *and Third Albany Income Notes, LLC*

| | |
|---|---|
| Phillips, Lytle LLP<br>One Canalside<br>125 Main Street<br>Buffalo, NY 14203 | WILLIAM J. BROWN, ESQ. |

*JAT Construction Co., Inc. Defined Benefit Pension Plan, Joseph Allegretta, and Suzanne Allegretta*

| | |
|---|---|
| McNamee, Lochner Law Firm<br>677 Broadway<br>Albany, NY 12207-2503 | KEVIN LAURILLIARD, ESQ. |

*Stan Rabinovich and Eva Rabinovich*

| | |
|---|---|
| Glavin, Glavin Law Firm<br>69 Second Street<br>P.O. Box 40<br>Waterford, NY 12188 | JAMES H. GLAVIN, IV, ESQ. |

*Certain Investors*[1]

| | |
|---|---|
| Weir & Partners LLP<br>767 Third Avenue, 30th Floor<br>New York, NY 10017 | BONNIE R. GOLUB, ESQ.<br>WALTER WEIR, JR., ESQ. |

*RBS Citizen, N.A.*

---

[1] Attorneys Golub and Weir represent numerous investors all of whom are identified in the notice of appearance. (Dkt. No. 860.) The court subsequently ordered that the objection filed on behalf of these investors be withdrawn as to investors Ronald and Linda Broast. (Dkt. No. 893.)

| | |
|---|---|
| Cooper, Erving Law Firm<br>39 North Pearl Street, 4th Floor<br>Albany, NY 12207 | MICHAEL A. KORNSTEIN, ESQ. |
| David G. Newcomb<br>Pro Se<br>224 Independence Way<br>Mount Bethel, PA 18343 | |
| Judith A. Newcomb<br>Pro Se<br>224 Independence Way<br>Mount Bethel, PA 18343 | |
| *FINRA & the FINRA Employees*<br>National Association of Securities<br>Dealers, Inc.<br>1735 K Street N.W.<br>Washington, D.C. 20006 | TERRI L. REICHER, ESQ. |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>445 Broadway<br>Albany, NY 12207-2924 | ELIZABETH C. COOMBE<br>Assistant U.S. Attorney |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

The court-appointed receiver, William Brown, moves for an order to approve a plan of distribution of estate assets and to authorize interim distributions. (Dkt. No. 847.) The four sets of investors who object to the

plan are JAT Construction Co., Inc. Defined Benefit Pension Plan, Joseph Allegretta, and Suzanne Allegretta (collectively, "JAT investors"), (Dkt. No. 856), Certain Investors[2], (Dkt. No. 862), Stephen Fowler, (Dkt. No. 865), and Eva Rabinovich and Stan Rabinovich, (Dkt. No. 868), (collectively, "Rabinovich investors"). For the reasons the follow, the Receiver's motion is granted.[3]

## II. Background

### A. Summary of the Plan

The facts giving rise to the Receiver's motion are well known to the parties, detailed in the court's previous decisions, (Dkt. Nos. 807, 816), and will not be repeated here. The Receiver proposes to distribute approximately $22 million in receivership funds[4] from entities controlled or owned by defendants Timothy M. McGinn and David L. Smith ("MS

---

[2] The Certain Investors are named in their attorney's notice of appearance. (Dkt. No. 860.)

[3] The Rabinovich investors apparently move for leave to file a sur-reply in opposition to the Receiver's motion. (Dkt. No. 892.) Consistent with the court's previous order, (Dkt. No. 891), the motion is denied.

[4] The Receiver notes that approximately $5 million of this total was the subject of an appeal to the Second Circuit and would, therefore, be held back pending the outcome of the appeal. (Dkt. No. 847, Attach. 2 ¶ 16.) Since the filing of the Receiver's motion, the Second Circuit has affirmed this court's decision. (Dkt. No. 894.) Accordingly, that amount is included in the Receiver's proposed interim distribution.

Entities"). (Dkt. No. 847, Attach. 2 ¶¶ 3, 16; Dkt. No. 847, Attach. 3 at 28.) He has recommended that an interim distribution at this time is in the best interest of the MS Entities and the investors of the MS Entities. (Dkt. No. 847, Attach. 3 at 2.) The Receiver will continue to recover assets from the MS Entities and intends to make further distributions once those assets are obtained. (*Id.* at 10.)

The Receiver's proposed distribution plan pools the assets of the MS Entities and distributes the pooled assets to investors on a pro rata basis. (*Id.* at 11.) Accordingly, an investor's pro rata share is the ratio of the allowed amount of the investor's claim to the aggregate of all allowed claims. (*Id.* at 12.) The Receiver does not give effect to any pre-receivership subordination arrangements governing the investors' investments with the MS Entities, which the Receiver maintains will ensure an equitable distribution among the investors. (*Id.*) Additionally, to avoid "a disproportionate or double recovery," the Receiver requires investors to certify whether they have applied for or received collateral recovery for their claimed losses. (*Id.* at 11.) If an investor has received a collateral recovery, that amount will be offset from their recovery under the receivership estate. (*Id.*) The Receiver advocates that this offset will treat

5

investors' claims equally "with respect to the percentage of their allowed claim amounts they recover from all sources as of the date of the payments." (*Id.*)

The Receiver calculated the amount of each investor's claim according to the net investment method. (*Id.* at 12.) As such, the claims are equal to the amount of the investor's initial investment less any distribution before the Receiver's appointment. (*Id.*) The Receiver characterizes all payments to investors as a return of principal unless the investor was provided with tax forms indicating that the payment was a payment of interest. (*Id.*)

The Receiver also proposes to establish a reserve fund for claims initially deemed by him as disputed, contingent, or unliquidated. (*Id.* at 13.) These claims are excluded from this interim distribution. (*Id.*) However, the Receiver will file a subsequent motion notifying the court of the disputed claims and allow those investors to file objections, which the court will ultimately rule on. (*Id.*) Funds will be reserved for these claims throughout the procedure for disputed claims. (*Id.*)

**B.** **Objections**

    *1.* *Fowler and Certain Investors*

The objections of Fowler and Certain Investors largely overlap.  They both principally object to the collateral offset provision, arguing that it is vague, ambiguous, improper, and inequitable.  (Dkt. No. 862, Attach. 2 at 3-7; Dkt. No. 865, Attach.1 at 6-12.)  Specifically, Certain Investors contend that the provision is vague and ambiguous because the Receiver does not explain by what amount their recovery from third parties will reduce their recovery from the receivership estate.  (Dkt. No. 862, Attach. 2 at 3.)  Additionally, both argue that the offset is improper because the Receiver steps in the shoes of the MS Entities and could not have pursued their same claims against third parties.  (*Id.* at 5; Dkt. No. 865, Attach. 1 at 6-8.)  To that end, both contend that the Receiver effectively and improperly assigned their third party recoveries to the receivership estate.  (Dkt. No. 862, Attach. 2 at 5; Dkt. No. 865, Attach. 1 at 6-8.)  Finally, both assert that the provision is inequitable because it penalizes and disincentivizes investors from pursuing claims against third parties.  (Dkt. No. 862, Attach. 2 at 5; Dkt. No. 865, Attach. 1 at 6-8.)

2. *Rabinovich Investors*

In his initial review, the Receiver disputed the Rabinovich investors' claim.  (Dkt. No. 868, Attach. 1 ¶ 3.)  First, the Rabinovich investors object

7

that they are denied due process because their claim is excluded from this interim distribution. (Dkt. No. 868 at 3-4.) Second, they contend that all claimants must be treated equally and receive a distribution at the same time. (*Id.* at 4-5.)

### 3. *JAT Investors*

The JAT investors object, arguing that the Plan fails to specifically state whether they will receive a distribution for their claims and by what percentage. (Dkt. No. 856 ¶ 3.)

## C. SEC Approval of the Plan

The SEC supports the Receiver's Plan as the most equitable approach to distribute recoveries to the investor victims. (Dkt. No. 884.) The SEC also responds to the objections as discussed below. (*Id.* at 2-4.)

## IV. Discussion

Courts have "broad authority to craft remedies for violations of the federal securities laws," including "the power to approve a plan of distribution proposed by a federal receiver." *SEC v. Byers*, 637 F. Supp. 2d 166, 174 (S.D.N.Y. 2009), *aff'd sub. nom. SEC v. Orgel*, 407 F. App'x 504 (2d Cir. 2010), *aff'd sub. nom. SEC v. Malek*, 397 F. App'x 711 (2d Cir. 2010); *see SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 82-83 (2d Cir. 2002).

As such, courts have the discretion to approve any receiver's plan that is "fair and reasonable." *SEC v. Wang*, 944 F.2d 80, 81, 85 (2d Cir. 1991) (holding that a distribution plan should be "reviewed under [the district] court's general equitable powers to ensure it is fair and reasonable"). In exercising their discretion, courts "may defer to the receiver's choices for the plan's details and should give substantial weight to the SEC's views regarding a plan's merits." *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231, 2014 WL 2112032, at *14 (S.D.N.Y. May 6, 2014) (citing *Byers*, 637 F. Supp. 2d at 175).

Courts have routinely approved receivership plans recommending pro rata distributions as fair and reasonable to compensate victims of fraud. *See, e.g.*, *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 327, 334 (7th Cir. 2010); *Credit Bancorp, Ltd*, 290 F.3d at 88-89. When "investors' assets are commingled and the recoverable assets in a receivership are insufficient to fully repay the investors, 'equality is equity.'" *Wealth Mgmt. LLC*, 628 F.3d at 333 (quoting *Cunningham v. Brown*, 265 U.S. 1, 13 (1924)). In particular, pro rata distributions are proper "where the funds of the defrauded victims [ar]e commingled and where victims [ar]e similarly situated with respect to their relationship to the defrauders." *Credit*

9

*Bancorp, Ltd*, 290 F.3d at 88-89.  Notably, pro rata distributions are "especially appropriate for fraud victims of a Ponzi scheme" because whether "a particular customer's assets are traceable is a result of merely fortuitous fact that the defrauders spent the money of the other victims first."  *Id.* at 89 (internal quotation marks and citations omitted).

Here, a pro rata distribution is fair and reasonable because the funds were commingled and the victims are similarly situated.  As detailed in the court's February 17, 2015 Memorandum-Decision and Order, investor funds from one offering were regularly used to cover interest and principal payments in other, separate offerings.  (Dkt. No. 807 at 10-16.)  Additionally, rather than being invested, the funds were often funneled through a separate entity to finance that entity's payroll.  (*Id.* at 11-12.)  Evidence of commingling is sufficient to satisfy this requirement of *Credit Bancorp*.  *See Byers*, 637 F. Supp. 2d at 178 (noting that "there [wa]s some evidence that commingling occurred, and the law does not appear to require more than that").

The investor victims, here too, are similarly situated.  To fall under this designation, investors "need not be identical, but there should be a reasonably close resemblance of facts and circumstances."  *Byers*, 637 F.

Supp. 2d at 179-80 (internal quotation marks and citation omitted). Victims who invest in separate legal entities are similarly situated if their investments were "part of a unified scheme to defraud." *Id.* at 181 (internal quotation marks and citation omitted). For example, in *Byers*, the court found that investors were similarly situated because the separate entities were commonly managed and investments were regularly pooled to offset expenses across all entities. *See id.* at 180. As in *Byers*, the entities here were all controlled by McGinn and Smith. (Dkt. No. 847, Attach. 2 ¶ 3.) Additionally, as noted above, investor funds were transferred between these entities to cover interest and principal payments. (Dkt. No. 807 at 10-16.) Accordingly, the investments fell under a common scheme to defraud, rendering the investor victims similarly situated. Because the funds were commingled and the investors are similarly situated, the court finds that a pro rata distribution is a fair and reasonable remedy to compensate the victims.

The court now turns to the filed objections. First, regarding the objections of Fowler and Certain Investors, the collateral offset provision is neither vague, improper, or inequitable. The Receiver explains that the defrauded investors who receive third party recoveries will have their

11

allotted distribution from the receivership estate reduced on a dollar for dollar basis. (Dkt. No. 883 at 3-4.) This is confirmed by the offset provision's language that reductions will be by "such compensation actually received." (Dkt. No. 847, Attach. 2 ¶ 21.) Accordingly, the collateral offset provision is not vague.

Nor is the collateral offset provision improper or inequitable. Courts have regularly approved offset provisions in distribution plans. *See, e.g., SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738-41 (9th Cir. 2005); *Wang*, 944 F.2d at 87-88; *In re The Reserve Fund Sec. & Derivative Litig.*, 673 F. Supp. 2d 182, 201 (S.D.N.Y. 2009). Contrary to the contentions of Fowler and Certain Investors, the Plan does not require an assignment of third party recoveries to the receivership estate. (Dkt. No. 862, Attach. 2 at 5; Dkt. No. 865, Attach. 1 at 6-8.) Investors retain all of their third party recoveries. (Dkt. No. 883 at 8.) In attempting to equalize recovery among investors, the reduction ensures that no one investor recovers a disproportionate percentage of their allowed claim after considering all sources of recovery. (Dkt. No. 847, Attach. 2 ¶ 21.) As "equality is equity," *Wealth Mgmt. LLC*, 628 F.3d at 333 (internal quotation marks and citation omitted), the collateral offset is a reasonable solution to allocating the

12

limited recoveries, *see Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 84 (2d Cir. 2006) (explaining that "[w]hen funds are limited, hard choices must be made") (internal quotation marks omitted).

Furthermore, the collateral offset is not inequitable. Fowler and Certain Investors argue that the collateral offset provision is inequitable *to them*. (Dkt. No. 862, Attach. 2 at 4-5; Dkt. No. 865 at 8-12.) Courts, however, should consider all investor victims when crafting an equitable remedy. *See SEC v. Parish*, No. 2:07-cv-00919, 2010 WL 5394736, at *9 (D.S.C. Feb. 10, 2010) (rejecting the objections of a minority of investors that obstruct a fair result to the majority of investors). Here, as the SEC explains, the vast majority of investors who do not otherwise qualify for outside recovery would receive a smaller payout without the offset. (Dkt. No. 884 at 3.) "An equitable plan is not necessarily a plan that everyone will like." *Byers*, 637 F. Supp. 2d at 168. In balancing the equities, the court agrees that the collateral offset provision as drafted by the Receiver is fair and reasonable.

Second, the Robinovich investors' objections lack merit. As the SEC notes, there is no authority, and the Robinovich investors fail to cite to any,

which requires the adjudication of their claim before an interim distribution may be made. (Dkt. No. 884 at 3.) Moreover, the Robinovich investors will not be prejudiced as the Plan reserves monies for disputed claims. (Dkt. No. 847, Attach. 3 at 13); *see SEC v. Michael Kenwood Capital Mgmt.*, 630 F. App'x 89, 91 (2d Cir. 2015) (affirming a district court's approval of a distribution plan and initial distribution when sufficient funds were "set aside . . . in a reserve fund" for disputed claims).

Finally, the Receiver has already provided either an explanation for or the information requested by the JAT investors. The Receiver represents that the claims of the JAT investors are not listed as disputed, contingent, or unliquidated, rendering them eligible for an interim distribution. (Dkt. No. 883 at 14.) This information has been communicated to the JAT investors. (*Id.*) Furthermore, the claims procedure outlined by the Receiver lists the total assets available for distribution and discusses expenses associated with the receivership estate. (Dkt. No. 847, Attach. 2 ¶¶ 15, 16.) The Receiver correctly notes that the exact percentage of any particular claim recovery is dependant upon certain factors and a precise calculation is premature. (Dkt. No. 883 at 14-15.)

14

In sum, the Receiver's Plan represents an equitable balancing to achieve a fair and reasonable result for all investors and an interim distribution is appropriate at this time.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Rabinovich's letter motion to file a sur-reply (Dkt. No. 892) is **DENIED**; and it is further

**ORDERED** that the Receiver's motion for an order approving of his distribution plan and authorizing interim distributions (Dkt. No. 847) is **GRANTED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 31, 2016
Albany, New York

*Gary L. Sharpe*
Gary D. Sharpe
U.S. District Judge