UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SECURITIES AND EXCHANGE
COMMISSION,

                    **Plaintiff,**

                    v.

**MCGINN, SMITH & CO., INC.
et al.,**

                    **Defendants.**
_____

1:10-cv-457
(GLS/CFH)

## SUMMARY ORDER

Pending is the third motion of William J. Brown, as Receiver, (hereinafter "the Receiver"), for an order disallowing certain claims. (Dkt. No. 984.) For the reasons below, the motion is granted.

Frank H. Chiappone, William F. Lex, and Philip S. Rabinovich, (hereinafter "the brokers"), were registered representatives of defendant McGinn, Smith & Co., Inc., (hereinafter "MS & Co."). (Dkt. No. 985 at 1.)[1] By way of the pending motion, the Receiver seeks an order disallowing or

---

[1] The court assumes the parties' familiarity with the facts of this case and recites only those relevant for purposes of the instant motion.

equitably subordinating the brokers' claims. (*Id.* at 1-2.)[2] As discussed below, the Receiver later filed a supplement to his original motion. (Dkt. No. 1032). Before it was supplemented, the Receiver's motion was originally premised on factual findings made against the brokers in a decision by an Administrative Law Judge (ALJ) in a Securities and Exchange Commission (SEC) administrative proceeding. (Dkt. No. 985 at 1, 3-9.) The gist of the Receiver's argument was that "[the brokers] should not be permitted to share in investor recoveries after recklessly selling MS & Co. offerings to innocent investors in complete disregard of their duty owed to their customers." (*Id.* at 2.)

In the face of the Receiver's motion, only Chiappone filed a response

---

[2] The Receiver also seeks to disallow (or, in the alternative, equitably subordinate) the claims transferred to Lex's wife, Kathleen Lex. (Dkt. No. 985 at 2, 11, 15-16.) "The Receiver is seeking disallowance, or equitable subordination, of Ms. Lex's claims along with Lex's claims because the investment registers show that these investments were originally made by Lex and Ms. Lex as joint investors." (*Id.* at 11.) Kimellen Lex, whose relationship with Lex is not specified by the Receiver, also holds a joint claim with Lex, (*id.* at 17 n.4), and the Receiver seeks to disallow that joint claim, (Dkt. No. 984, Attach. 2 at 1). Notably, both Kathleen Lex and Kimellen Lex received notice and time to respond, (Dkt. No. 985 at 17 n.4; *Id.*, Attach. 9 at 1, 3), and did not.

2

in opposition. (Dkt. No. 995.)³ Chiappone's arguments concerned the ALJ's decision. (*Id.* at 2-11.) That is, he argued that the decision was on appeal to the SEC Commissioners, (*id.* at 2), and could be appealed to the Second Circuit, (*id.* at 11); the decision might be mooted by a Constitutional issue then before the Supreme Court, (*id.* at 2-3); and the decision was erroneous, (*id.* at 3-10). In a nutshell, Chiappone argued that he "was innocent of any unlawful conduct[] and . . . is entitled to the benefit of the doubt until all appeals are exhausted." (*Id.* at 11.)

As foreshadowed by Chiappone's argument, on June 21, 2018, the Supreme Court decided *Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044 (2018), which held that SEC ALJs were subject to the Appointments Clause, and thus any defendant in an SEC proceeding who was tried before an ALJ not properly appointed was entitled to a new hearing, *id.* at

---

³ In a letter dated February 26, 2019, Rabinovich responded to the Receiver's supplement. (Dkt. No. 1040.) Rabinovich states that he "did not . . . and do[es] not now, oppose the relief that the Receiver s[eeks]." (*Id.* at 1.) Instead, Rabinovich "ask[s] that the [c]ourt direct the SEC to redact any references to individual investors that are contained within the numerous exhibits attached to its unnecessary filing." (*Id.* at 4.) Rabinovich feels that the "filings by the Receiver and the SEC, and in particular their references to [him], are, most charitably put, unnecessary and inaccurate." (*Id.*) However, other than disagreeing with what the Receiver and the SEC filed, he offers no basis for redaction, and the court denies the request.

2055. Accordingly, on October 1, 2018, the SEC remanded the administrative proceeding against the brokers for reassignment to a new ALJ. (Dkt. No. 1032 at 5.) On December 21, 2018, the brokers and the SEC entered into an Order, (*id.*, Attach. 1 (hereinafter "the SEC Order")), which stated that the brokers violated Sections 17(a)(2) and 17(a)(3) of the Securities Act, (Dkt. No. 1032 at 5 (citing the SEC Order at 5)).

On January 29, 2019, the Receiver filed a supplement to the pending motion to apprise the court of these developments. (Dkt. No. 1032.) The Receiver maintains that the brokers' claims should be disallowed or equitably subordinated based on the SEC Order, which contains findings "with regard to the [b]rokers' conduct [that] are similar to the [finding]s in the [ALJ's decision]—numerous red flags and ignoring the duty to investigate." (*Id.* at 7 (internal marks altered).) Chiappone did not file a response to the Receiver's supplement. The SEC filed a brief in support of the Receiver's motion on February 12, 2019. (Dkt. No. 1035.)

"[A] district court has extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration." *F.D.I.C. v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992); *see Sec. & Exch. Comm'n v. McGinn, Smith & Co.*, 1:10-

4

cv-457, 2016 WL 6459795, at *2 (N.D.N.Y. Oct. 31, 2016) ("Courts have broad authority to craft remedies for violations of the federal securities laws[.]") (internal quotation marks and citations omitted). "It is within a district court's discretion to approve a distribution plan proposed by a receiver—and to defer to the receiver's choices for the plan's details—so long as the plan is 'fair and reasonable.'" *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 5-CV-5231, 2016 WL 10821985, at *3 (S.D.N.Y. May 20, 2016) (quoting *Sec. Exch. Comm'n v. Wang*, 944 F.2d 80, 81 (2d Cir. 1991)) (internal citation omitted).

The court agrees with the Receiver that the brokers' claims should be disallowed because of their conduct; the brokers should not be permitted to share in the recovery with the innocent investors who were harmed by that conduct. (Dkt. No. 1032 at 3.) The SEC Order states that the brokers, who "were among the top-selling brokers at MS & Co.," "violated Section[s] 17(a)(2) and (3) of the Securities Act by negligently failing to perform sufficient due diligence to form a reasonable basis for their recommendations . . . to their customers." (SEC Order at 5.) Specifically, disclosures were made that should have caused the brokers to conduct additional inquiries—including how customer money would be

5

invested—before recommending the investments. (*Id.* at 6, 7.) Also, after being informed, in January 2008, that certain investments were in default, payments to investors would be curtailed, and the offerings would be restructured, the brokers continued to sell investments for MS & Co., despite "the accumulation of red flags since . . . September 2003." (*Id.* at 7.) In one instance, the brokers failed to check publicly-available information regarding the October 2007 Firstline Trust offering, the proceeds of which were loaned to a company that filed for bankruptcy. (*Id.*) After the bankruptcy filing, the brokers continued to sell Firstline Trust certificates. (*Id.*) As part of the SEC Order, Chiappone, Lex, and Rabinovich were ordered to disgorge $23,329, $72,726, and $53,029, respectively, which were the amounts of their commissions during the relevant limitations period. (*Id.* at 8, 9.)[4]

District courts have discretion to exclude claimants involved in the underlying fraudulent scheme. *See Sec. & Exch. Comm'n v. Byers*, 637 F.

---

[4] The Receiver notes that the penalties imposed by the SEC Order were reduced because a five-year statute of limitations applied, "which resulted in a restricted amount of potential disgorgement by the [b]rokers." (Dkt. No. 1032 at 7; *see* Dkt. No. 984, Attach. 6 at 117-18 (ordering, by ALJ's decision, disgorgement by Chiappone, Lex, and Rabinovich of $103,800, $335,066, and $158,542, respectively, as well as a civil money penalty of $130,000 each).)

Supp. 2d 166, 184 (S.D.N.Y. 2009). In *Sec. & Exch. Comm'n v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 963 (11th Cir. 2010), the Eleventh Circuit upheld the rejection of a claim by a sales agent who was among those "responsible for recruiting the investors who ultimately suffered losses due to the [scheme]'s fraud" and received "commissions . . . derived from the funds of investors who were victimized by the fraudulent scheme." In another case, a district court excluded an individual who "was more intimately involved with [the scheme] than the vast majority of clients and [whose] activities extended to marketing and solicitation on [the scheme]'s behalf." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs.*, Civil No. 2:02 CV 39, 2006 WL 3813320, at *12 (D. Utah Dec. 26, 2006); *see Sec. & Exch. Comm'n v. Enterprise Tr. Co.*, No. 8 C 1260, 2008 WL 4534154, at *3, *7 (N.D. Ill. Oct. 7, 2008) (approving receiver's proposal to exclude individuals who, among other things, induced clients and violated state laws). In a recent decision, a district court surveying the case law discerned that "it would be inequitable to permit a person whose active misconduct or unlawful activity resulted in harm to investors to recover through a distribution." *Sec. & Exch. Comm'n v. Bivona*, Case No. 16-cv-1386, 2017 WL 4022485, at *13 (N.D. Cal. Sept. 13, 2017) (internal citations omitted).

7

In this case, the brokers' violations of the Securities Act—ignoring numerous red flags and failing their customers on their way to becoming some of the top-selling brokers at MS & Co., (SEC Order at 5, 6-7, 8, 9)—are sufficiently similar to the misconduct in the cases above to merit approving the Receiver's recommendation of disallowance. Moreover, after responding to the Receiver's initial motion and focusing on the ALJ's decision, (Dkt. No. 995), Chiappone did not respond to the Receiver's supplement. The court is left with the Receiver's well-reasoned arguments, which no longer rely on the ALJ's decision that Chiappone found fault with,[5] (Dkt. No. 1032 at 5-8), as well as the SEC's similar arguments in support of disallowance, (Dkt. No. 1035 at 1-7)[6]; *cf. Byers*, 637 F. Supp. 2d at 175 ("The SEC's judgment is entitled to deference from this [c]ourt.")

---

[5] Chiappone also argued that "[n]o proof was submitted and no finding was made that [he] knew of the fraud." (Dkt. No. 995 at 3.) But Chiappone fails to demonstrate why that should be dispositive, especially in light of case law to the contrary. *See Pension Fund*, 377 F. App'x at 962 (reasoning argument by excluded individual that "he did not personally commit fraud . . . misses the mark"); *Bivona*, 2017 WL 4022485, at *13 ("[C]ourts have approved the exclusion of individuals . . . even when the claimant did not knowingly engage in unlawful, wrongful, or criminal conduct.").

[6] The SEC does not request equitable subordination in the alternative; it argues that the brokers "do not deserve any of the funds that the Receiver has gathered for the benefit of victims." (Dkt. No. 1035 at 2.)

8

(internal citation omitted). In short, the Receiver's proposed disallowance is fair and reasonable. *Cf. Amerindo Inv. Advisors Inc.*, 2016 WL 10821985, at *3; *Byers*, 637 F. Supp. 2d at 184.

Accordingly, it is hereby

**ORDERED** that, upon the third motion of William J. Brown, as Receiver, for an order disallowing certain claims (Dkt. No. 984); and notice of the motion having been given to the Securities and Exchange Commission, each of the brokers listed on Exhibit A to the motion (Dkt. No. 984, Attach. 2), Kathleen Lex, and Kimellen Lex, by first class mail, and all parties who have filed a Notice of Appearance in this action by ECF, and all creditors of the McGinn, Smith entities and other parties in interest via the Receiver's website, which notice is deemed good and sufficient notice; and the court having deemed that sufficient cause exists, the motion is **GRANTED**; and it is further

**ORDERED** that each of the claims listed on Exhibit A to the motion (Dkt. No. 984, Attach. 2) is disallowed; and the rights of the Receiver to object on any other basis to the claims of all investors or claimants is expressly preserved; and it is further

**ORDERED** that Rabinovich's request for redaction (Dkt. No. 1040) is

**DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

March 6, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge