**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————

**SECURITIES AND EXCHANGE**
**COMMISSION,**

|                          |                     |
|--------------------------|---------------------|
| **Plaintiff,**           | **1:10-cv-457**     |
|                          | **(GLS/CFH)**       |

**v.**

**MCGINN, SMITH & CO., INC. et al.,**

                                    **Defendants.**

———————————————————

## SUMMARY ORDER

Pending is the ninth claims motion of William J. Brown, as Receiver,

(hereinafter "the Receiver"), for an order: (1) disallowing certain claims,

(2) reclassifying certain claims, (3) applying preferential payment offset to

certain claims, and (4) expunging certain paper claims, (hereinafter "the

Ninth Motion").  (Dkt. No. 1075.)  For the reasons that follow, the Ninth

Motion is granted.

### A.    Remar-Lex Claims[1]

In March 2019, the court entered a Summary Order granting the

Receiver's Third Claims Motion, (Dkt. No. 984), and disallowing claims

———————————————

[1]  Detailed summaries of the facts surrounding this action were included in the court's
February 17, 2015 and March 30, 2015 orders.  (Dkt. Nos. 807, 816.)  Accordingly, the court
assumes the parties' familiarity with the facts of this case and recites only those relevant for
purposes of the pending motion.

asserted by, among others, William Lex, (Dkt. No. 1043).  Lex was a broker with McGinn, Smith & Co., Inc. (hereinafter "MS & Co.") "who sold $45,536,000 of MS & Co. private placements between September 2003 and July 2009."  (Dkt. No. 1075, Attach. 11 at 8.)

Since the court's March 2019 Summary Order, "the Receiver discovered that Lex holds two additional disputed claims[, held jointly by Lex and Kimellen Remar,] that were not included in the Third Claims Motion" (hereinafter "the Remar-Lex Claims").  (*Id.*)  Neither Lex nor Remar responded to the pending motion.  For substantially the same reasons stated in the court's March 2019 Summary Order, (Dkt. No. 1043), the Remar-Lex claims listed on Exhibit A to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 4), are hereby disallowed.

**B.   Rabinovich Claims**

The Receiver moves to disallow claims filed by Stanley Rabinovich (hereinafter "the Rabinovich Claims"), who is the father of a former MS & Co. senior vice president and investment advisor, and who allegedly assisted Timothy McGinn and David Smith "with the implementation of

the[ir] Ponzi scheme and was repaid directly from the scheme."[2]  (Dkt. No. 1075, Attach. 11 at 15-16.)  As an initial matter, Rabinovich's request for an evidentiary hearing prior to a decision by the court, (Dkt. No. 1094 at 16), is denied.

Despite the court's broad discretion to approve a distribution plan proposed by a receiver, *see S.E.C. v. Amerindo Inv. Advisors Inc.*, No. 05-cv-5231, 2016 WL 10821985, at *2 (S.D.N.Y. May 20, 2016), "the [d]ue [p]rocess clause requires that non-party claimants must be afforded notice and an opportunity to be heard before a [r]eceiver or a [c]ourt resolves its claims," *SEC v. Callahan*, 193 F. Supp. 3d 177, 204 (E.D.N.Y. 2016) (citations omitted).

However, because the money at issue here is under the control of the receivership, and because the dispute "directly implicates the disposition of receivership assets, the [c]ourt has discretion to address [the Ninth Motion] in a summary proceeding."  *See Bank of America, Nat. Ass'n v. Commack Props., LLC*, No. 09 CV 5296, 2011 WL 5401763, at *2 (E.D.N.Y. Nov. 4, 2011) (citations omitted); *see also S.E.C. v. Byers*, 637

---

[2]  The Receiver initially moved to disallow claims filed by Rabinovich's wife, Eva, as well.  (Dkt. No. 1075, Attach. 11 at 10-11, 15-16.)  However, the Receiver conceded on reply that claims individually held by Eva, which are identified in a revised version of Exhibit A to the Ninth Motion, (Dkt. No. 1097, Attach. 1 at 4), should not be disallowed, (Dkt. No. 1097 at 9.)

F. Supp. 2d 166, 184 (S.D.N.Y. 2009) ("[I]t is well-settled that a [d]istrict [c]ourt has the authority, in implementing a distribution plan in a receivership case, to use summary proceedings to evaluate claims and claim priority, provided the parties have an opportunity to be heard to argue their claims." (citations omitted)); *F.D.I.C. v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) ("[T]he use of summary proceedings in equity receiverships, as opposed to plenary proceedings under the Federal Rules [of Civil Procedure], is within the jurisdictional authority of a district court." (citations omitted)).  Indeed, "a summary proceeding is the preferred course of action in a federal receivership because it reduces the time necessary to settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets."  *Byers*, 637 F. Supp. 2d at 184 (internal quotation marks and citation omitted).

Both the Receiver and Rabinovich have had an opportunity to be heard and have presented thorough arguments on the relevant issues raised in the Ninth Motion.  (Dkt. Nos. 1075, 1094, 1097.)  Accordingly, Rabinovich's request for a hearing and time to conduct additional discovery is denied, as the court finds the briefing constitutes sufficient due process.  *See Byers*, 637 F. Supp. 2d at 184.

Turning to the merits, the Receiver asserts that, in 2007 and 2009, Rabinovich provided two bridge loans worth a total of $850,000 to MS & Co., and that, by providing these loans, he allowed certain offerings to close, at which time escrow could be broken and McGinnn and Smith could access investor funds in order to enrich themselves and MS & Co. entities.  (Dkt. No. 1075, Attach. 11 at 8-11.)  Further, the Receiver asserts that the loans were treated as investments; that funds raised by MS & Co. from new investments were "improperly funneled directly to . . . Rabinovich"; and that Rabinovich's loans "were improperly repaid in full from the[se] secondary sales."  (*Id.*)

In response, Rabinovich contends that he did not know about the Ponzi scheme or that his loans were assisting McGinn and Smith in implementing that scheme; rather, he merely made what he thought were legitimate loans to MS & Co.  (Dkt. No. 1094 at 8-11.)  Further, he asserts that he was not a participant or beneficiary of the scheme, but, instead, a victim of it, and that the Receiver has not sufficiently shown otherwise. (*Id.*)  In reply, the Receiver argues that, even if Rabinovich did not have fraudulent intent, he should have known about the Ponzi scheme based on the following "red flags": (1) the loans were documented as

investments and treated as such, and (2) as an investor in a different MS & Co. fund, Rabinovich was aware that interest payments were being reduced and ultimately eliminated, while he was being repaid in full for his "loans." (Dkt. No. 1097 at 3-5.) For the reasons that follow, the court agrees with the Receiver.

District courts are afforded discretion "to approve a distribution plan proposed by a receiver—and to defer to the receiver's choices for the plan's details—so long as the plan is fair and reasonable." *Amerindo*, 2016 WL 10821985 at *3 (internal quotation marks and citations omitted). To be sure, "a district court has *extremely broad* discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration." *Bernstein*, 786 F. Supp. at 177 (emphasis added) (citations omitted); *see Byers*, 637 F. Supp. 2d at 174 ("Court[s] [have] broad authority to craft remedies for violations of the federal securities laws." (citations omitted)).

Rabinovich notes that "[a]ctual, not constructive, knowledge is required to show that someone was an active participant in, or an aider and abettor of, fraud" and that there is no evidence of Rabinovich's knowledge of the Ponzi scheme. (Dkt. No. 1094 at 8-9.) But Rabinovich

6

fails to demonstrate why that should be dispositive, especially in light of case law to the contrary. *See S.E.C. v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 962 (11th Cir. 2010) (reasoning that the argument made by an excluded individual that "he did not personally commit fraud . . . misses the mark"); *S.E.C. v. Bivona*, No. 16-cv-01386, 2017 WL 4022485, at *13 (N.D. Cal. Sept. 13, 2017) ("[C]ourts have approved the exclusion of individuals . . . even when the claimant did not knowingly engage in unlawful, wrongful, or criminal conduct.").

Indeed, the issue here is not whether Rabinovich committed or aided and abetted fraud.  Rather, the issue is whether, based on Rabinovich's conduct, equity dictates his claims be disallowed in order to favor legitimate, innocent investors who had no involvement in the Ponzi scheme.  The court is satisfied that equity does dictate as much for the reasons stated in the Receiver's motion, (Dkt. No. 1075, Attach. 11), which is summarized above and need not be discussed any further.

In a nutshell, though, Rabinovich, a sophisticated investor who invested millions of dollars in MS & Co. entities, should have known that his loans were being used for fraudulent purposes, especially based on the red flags identified by the Receiver and noted above.  (Dkt. No. 1097

7

at 3-5.)  Rabinovich was improperly funneled funds raised from new

investors at a time when other investors were receiving minimal, if any,

distributions, and Rabinovich knew this to be true.  (*Id.*)

Accordingly, the court, in an exercise of its broad discretion,

disallows the Rabinovich Claims.[3]  *See Bivona*, 2017 WL 4022485, at *13

("[I]t would be inequitable to permit a person whose active misconduct or

unlawful activity resulted in harm to investors to recover through a

distribution." (citation omitted)); *S.E.C. v. Merrill Scott & Assocs., Ltd.*, No.

2:02 CV 39, 2006 WL 3813320, at *12 (D. Utah Dec. 26, 2006) (excluding

an individual who "was more intimately involved with [the scheme] than

the vast majority of clients").

## C.   ADT and HSK Claims

The Receiver moves to reclassify certain claims asserted by ADT

Security Services, Inc. (hereinafter "the ADT Claims") and HSK Funding,

---

[3] The disallowed Rabinovich Claims include claims for investments that were held jointly between Rabinovich and Eva.  "The opening of a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to levy of a money judgment by the judgment creditor of one of the joint tenants."  *See S.E.C. v. Smith*, 646 F. App'x 42, 43 (2d Cir. 2016) (quoting *JRP Old Riverhead, Ltd. v. Hudson Sav. Bank*, 106 A.D.3d 914 (2d Dep't 2013)); *see Hudson Sav. Bank*, 106 A.D.3d at 914 (holding that a petitioner is "not required to establish that the judgment debtor was the sole contributor of funds to the [joint] account" in order for a judgment creditor to be entitled to a turnover of the entire contents of that account). Rabinovich points to no evidence in the record that might rebut this presumption.

Inc. (hereinafter "the HSK Claim").  (Dkt. No. 1075, Attach. 11 at 11-12,

17.)  This request is unopposed.

First, ADT filed two paper claims against TDM Cable Funding LLC

and Prime Vision Communications LLC, arising out of an October 2006

agreement whereby "TDM purchased from ADT a certain Balloon

Promissory Note for $3,165,762 made by Prime Vision to ADT"

(hereinafter "the ADT Note").  (*Id.* at 11.)  According to the agreement, "if

the ADT Note were paid or subsequently sold, the proceeds would be

divided and a portion would be paid to ADT."  (*Id.*)  Because the ADT Note

has not been paid or sold, "there is no basis upon which ADT may assert

a claim for payment against either TDM or Prime Vision."  (*Id.* at 17.)

Accordingly, the ADT Claims, listed on Exhibit B to the Ninth Motion, (Dkt.

No. 1075, Attach. 12 at 5), are hereby reclassified as an unsecured claim,

and are disallowed.

Next, a receivership entity, 107th Street Associates, LLC, borrowed

$1,000,000 from HSK pursuant to an October 2007 promissory note.  (Dkt.

No. 1075, Attach. 11 at 12.)  This loan was secured "by a pledge of stock"

in a separate entity.  (*Id.*)  Thus, because the HSK Claim, which is listed

on Exhibit B to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 5),

represents a secured debt obligation and not an investor claim, it is hereby

reclassified as a secured claim to the extent of the value of the collateral

and an unsecured claim for any deficiency for purposes of the plan of

distribution.

**D.    Preferential Payment Offset**

The Receiver seeks an order applying a preferential payment offset

as to claims of certain "preferred" investors.  (Dkt. No. 1075, Attach. 11

at 17-20.)  The purpose of the preferential payment offset that the

Receiver seeks in the Ninth Motion can be summarized as follows:

> Certain investors ("Preferred Investors") received
> preferential payments in the form of interest
> payments and redemptions ("Preferential Payments")
> made by two MS [& Co.] [e]ntities, McGinn Smith
> Funding LLC ("MSF") and TDM.  MSF and TDM . . .
> were used by McGinn and Smith to facilitate
> improper and fraudulent transfers between and
> among McGinn and Smith, personally, and other MS
> & Co. [e]ntities. . . . The Preferential Payments were
> made in late 2009 and early 2010, at the height of
> the Ponzi scheme and when many other MS & Co.
> investors ceased receiving any payments on account
> of their investments. . . . The funds used to make
> these Preferential Payments were not generated
> through the legitimate investment operations of TDM
> or MSF but instead were amounts raised from certain
> [t]rust [o]fferings or deposited directly by other
> investors or MS & Co. [e]ntities.  Consequently, the
> Preferred Investors received Preferential Payments

10

> comprised of funds that they were not entitled to receive, at a time when most other investors in MS & Co. were no longer receiving payments on account of their investments.

(*Id.* at 12-13 (internal quotation marks and citations omitted).)  The

Receiver further explains that:

> To permit the Preferred Investors to retain the Preferential Payments, without a corresponding dollar-for-dollar reduction in the amount of their pro rata distribution on account of their [claims], would result in the Preferred Investors retaining excess amounts improperly paid to the Preferred Investors by MS & Co. from funds that should have been invested, and not used to make payments of principal and interest.  The [p]referential [p]ayment [o]ffset promotes equality among all investors by accounting for this unfair treatment.

(*Id.* at 19.)  None of the investors subject to the proposed offset, whom are

listed on Exhibit C-1 to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 6),

have objected.

After a careful review of the Receiver's arguments as to this aspect

of the Ninth Motion, the court approves the preferential payment offset

described therein, and outlined on Exhibit C-1, (*id.*), as it will promote

equality amongst all investors.  Additionally, the paper claims filed by

certain Preferred Investors, listed on Exhibit C-2 to the Ninth Motion, (*id.*

at 7), are disallowed.

## E.   Paper Claims

Finally, the Receiver moves the court to disallow certain paper claims filed by various investors because they are either (1) "claims filed by investors for the same investments as their Receiver-granted claims but in different amounts"; (2) "claims filed by investors that are exactly duplicative and are in the exact amount of the claims listed on the [c]laims [w]ebsite"; (3) "claims for investments which are not reflected in the books and records of [MS & Co.]"; (4) "claims for investments in entities that are not part of the Receivership"; (5) "claims filed for investments in entities that were excluded from the Receivership by the [p]lan [d]istribution [o]rder"; and (6) "[u]ntimely [c]laims."  (Dkt. No. 1075, Attach. 11 at 21-22.) This aspect of the motion is unopposed as well.

Because there is no legal or equitable basis to make distributions to investors on account of these paper claims, which are listed on Exhibits D-1, D-2, and D-3 to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 8-11), they are hereby disallowed.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Ninth Motion, (Dkt. No. 1075), is **GRANTED**; and it is further

**ORDERED** that the Remar-Lex Claims, listed on Exhibit A to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 4), are **DISALLOWED**; and it is further

**ORDERED** that the Rabinovich Claims, listed on the revised version of Exhibit A to the Ninth Motion, (Dkt. No. 1097, Attach. 1 at 4), excluding claims marked as "Individual Claim," are **DISALLOWED**; and it is further

**ORDERED** that the ADT Claims listed on Exhibit B to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 5), are **RECLASSIFIED** to unsecured claims and are **DISALLOWED**; and it is further

**ORDERED** that the HSK Claim, listed on Exhibit B to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 5), is **RECLASSIFIED** to a secured claim to the extent of the value of the collateral and as an unsecured claim for any deficiency in accordance with the plan of distribution; and it is further

**ORDERED** that the application of the preferential payment offset to reduce the distributions to preferred investors is **APPROVED** as set forth on Exhibit C-1 to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 6); and it

is further

ORDERED that the preferred investor paper claims listed on Exhibit

C-2 to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 7), are

DISALLOWED; and it is further

ORDERED that each of the paper claims listed on Exhibits D-1, D-2,

and D-3 to the Ninth Motion, (Dkt. No. 1075, Attach. 12 at 8-11), are

DISALLOWED; and it is further

ORDERED that the rights of the Receiver to object on any other

basis to the claims of all investors or claimants is PRESERVED; and it is

further

ORDERED that the Clerk provide a copy of this Summary Order to

the parties.

IT IS SO ORDERED.

July 7, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge